Grace **BRADFORD**, on behalf of herself and all others similarly situated, Plaintiff,

v.

**PEOPLES NATURAL GAS COMPANY, INC.,** Defendant.

Civ. A. No. 71-752.

United States District Court, W. D. Pennsylvania.

June 25, 1973.

434

Harold Gondelman, Pittsburgh, Pa., David Berger, Philadelphia, Pa., Sylvia Roberts, Baton Rouge, La., for plaintiff.

C. R. Volk, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

## OPINION

DUMBAULD, District Judge.

The suave and subtle Southerners in Congress who put sex[1] into the Civil Rights Act of 1964[2] (doubtless with the

---

1. Addition of this omnific word was the result of an amendment offered from the floor by Howard W. Smith of Virginia on February 8, 1964. Cong.Rec.H.R. 7152, page 2484. Congressmen Smith, Mendel Rivers of South Carolina, and Andrews of Alabama argued that it would equalize the status of a white woman applying for a job in competition with a black woman; for without it the black woman would automatically be hired to avoid prosecution under the pending legislation. Congressman James Roosevelt stated that he would vote against it. *Ibid.*, 2491–92. It was adopted by a vote of 168–133. *Ibid.*, 2492. The bill passed the House February 10, 1964, by vote of 290 to 130. *Ibid.*, 2708–2709. It passed the Senate with amendments on June 19, 1964, by vote of 73 to 27. *Ibid.*, 14013. The House concurred in Senate amendments July 2, 1964. *Ibid.*, 15365.

2. 78 Stat. 253. Title VII of the Act deals with equal employment opportunities, and sec. 703 (42 U.S.C.A. § 2000e–2) provides: "It shall be an unlawful employment practice for an employer—

hope of defeating the bill, but the strategy backfired and a giant step towards "women's lib" was perhaps unintentionally taken) were not affected by Chief Justice Burger's subsequent proposal that when enacting new legislation Congress should consciously by means of an "impact statement" consider what new burdens in the way of case load will be imposed thereby on the federal judicial system.[3]

The impact of the "sexist" statute is not negligible, especially when it is invoked through the mechanism of a class action.[4]

■ A class action is not always the preferable remedy. The *res judicata* effect of a judicial decision of a legal issue often suffices.[5] In such instances the Court has discretion under Rule 23(b)(3) to refuse to permit a class action.

Another device for avoiding the unmanageable or burdensome aspects of class actions has been pointed out by Chief Judge Seitz in Katz v. Carte Blanche Corp., [No. 72–1054, 3rd Cir. May 22, 1973]. This is to limit the class action to the controlling common issue involved, and exclude the matter of relief, relegating the parties to seek an appropriate remedy for their own particular injuries in accordance with the impact upon them of the wrongful act

affecting differently a multitude of parties.

■ As a general rule of thumb it might be said that where employment discrimination is urged on the basis of specific circumstances relating to the individuals involved, a class action would be inappropriate. The same would be true if the issue depended on construction or application of particular language in a statute or collective bargaining contract, where relitigation would normally be effectively barred by *res judicata*. The class action technique would be more appropriate however, where a general policy adverse to the advancement of womankind is involved, not directed towards particular individuals nor involving specific issues of law or fact, but having a general adverse impact on numerous individuals arising as a consequence of such policy.

After these preliminary observations we turn to the situation in the case at bar.

Plaintiff filed this suit on August 9, 1971, purportedly on behalf of all women employees of defendant since July 2, 1965, (the effective date of the 1964 Civil Rights Act), estimating that over 300 persons would be included in the class. Systematic discrimination or exclusion directed at women as such is alleged. (Pars. 10 & 11).

---

(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin." [Italics supplied]

3. Chief Justice Warren H. Burger, "The State of the Federal Judiciary—1972", 58 A.B.A.J. 1049, 1050 (Oct. 1972). It would be helpful if the Supreme Court itself observed the same practice. As Judge Friendly has pointed out, "judicially effected doctrinal development has had substantial consequences upon the business of the federal courts . . . The impression is abroad that if a problem can-

not be remedied elsewhere, a solution must exist in the federal courts." Henry J. Friendly, Federal Jurisdiction: A General View (1973) 17–22. Thus much of the so-called "backlog" consists of what Chief Justice Hughes called "self-inflicted wounds." Charles Evans Hughes, The Supreme Court of the United States (1928) 50.

4. Henry J. Friendly, Federal Jurisdiction: A General View (1973) 21, 76–77, 118–20.

5. *Ibid.*, 118. We found it appropriate to rely on *res judicata* and eschew the ponderous paraphernalia of a class action in Tindall v. Hardin, 337 F.Supp. 563, 566 (W.D.Pa.1972), aff'd May 29, 1973.

**436**

A second count alleges deprivation of rights under 42 U.S.C. § 1983. Count III alleges violation of 28 U.S.C. § 206(d)(1). [This seems to be a misprint; 29 U.S.C. § 206(d)(1), a provision of the Fair Labor Standards Act, is intended.] Count IV alleges violation of Executive Order No. 11246, as amended by No. 11375, against defendant as a contractor or subcontractor with the Government. Count V is a pendent charge of violating Pennsylvania labor laws, 43 P.S. § 336.2. Defendant filed motions to dismiss. Briefs and oral argument have been had. Defendant seeks to dismiss Counts I, II, IV, and V; and that Count III not be treated as a class action.

■ Disposing of the easy questions first, it is clear that Count II must be dismissed since 42 U.S.C. 1983 by its terms applies only to action under color of State authority, and plaintiff does not allege that Pennsylvania is hostile to women workers, but merely complains of the defendant gas company's corporate policy and practice.

Defendant's status as a public utility does not clothe its private acts with public authority. Weyandt v. Mason's Stores, Inc., 279 F.Supp. 283, 287 (W.D. Pa.1968). By way of dictum, I think the complaint here would qualify as a claim alleging violations of a statute "providing for equal rights" under my interpretation of section 1983, advanced as a substitute for the test sponsored by Chief Justice Stone in Hague v. C.I.O., 307 U.S. 496, 530, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Dumbauld, "Federal Jurisdiction in Civil Rights Cases: A New View", 25 Rutgers Law Review (Summer, 1971) 545, 547–48. Lynch v. Household Finance Co., 405 U.S. 538, 542, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), eliminates the Stone interpretation. Whether it affords any support for my position is uncertain. (End of *obiter dictum*; we return to the highway.)

■ Arriving at the next easiest question, we conclude that Count IV should also be dismissed. Although the implication of private actions based on abstract prohibitions is a growing trend, based on the maxim *ubi jus ibi remedium* [Tindall v. Hardin, 377 F.Supp. 563, 566 (W.D.Pa.1972); Friendly, Federal Jurisdiction: A General View (1973) 21], we are constrained, after perusal of the executive orders here involved, to agree with the conclusion of our conscientious Judge Sorg in Braden v. University of Pittsburgh, 343 F.Supp. 836, 840 (W.D.Pa.1972) [remanded on other grounds April 11, 1973], that a careful reading of these orders [3 C.F.R. 173] "discloses no provisions which suggest or create any right in an individual or individuals to seek injunctive relief or to assert a claim for damages against an alleged non-complying contractor."

■ The thrust of the order is to prescribe administrative remedies as the exclusive mode of enforcement. The Secretary of Labor is charged with responsibility for enforcement of the contract provisions, and ineligibility for Government contracts is the principal sanction. Compliance Reports are to be filed by contractors with the contracting agency or the Secretary. Extensive provisions establish specific procedures for enforcement, including the holding of hearings, and issuance of publicity and recommendations to the Department of Justice and other agencies for the institution of proceedings. These specific provisions concerning sanctions and penalties seem to indicate "occupation of the field" to the exclusion of private lawsuits as a mode of enforcement, Foti v. Immigration Service, 375 U.S. 217, 225, 84 S.Ct. 306, 11 L.Ed.2d 281 (1962); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 720, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

■ We turn now to Count V. As defendant points out, 43 P.S. § 336.2(a) as amended in 1968 excludes from the

definition of employee a person subject to the Federal Fair Labor Standards Act (29 U.S.C. § 206). Plaintiff in Count III invokes the coverage of the federal act, and therefore excludes herself from a claim under the Pennsylvania act.

In any event, Pennsylvania is able adequately to enforce its own labor laws, and its courts to interpret and apply them, and we perceive no compelling considerations to move the conscience of the court to exercise its discretion in favor of this "pendent" claim.[6] Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); UMWA v. Gibbs, 383 U.S. 715, 722–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). We dismiss Count V.

As noted previously, defendant does not move to dismiss Count III [under the Equal Pay Act of June 10, 1963, 77 Stat. 56, 29 U.S.C. § 206(d)] but moves to strike the class action allegations of that count.

Whether such allegations be stricken or not is immaterial and to strike them would be fruitless, since the terms of 29 U.S.C. § 216(b), creating civil liability for violations of 29 U.S.C. § 206(d), expressly authorize what may properly be considered a class action.

Section 216(b) states, *inter alia*: "Action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*." [Italics supplied]

What is that but the essence of a class action?[7]

It is true that the law goes on to say that "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." A reasonable attorney's fee and costs are also awarded.

The right to bring or to become a party to such an action terminates upon the filing of a complaint by the Secretary of Labor on behalf of the employees, as is authorized by 29 U.S.C. § 217.

No such complaint by the Secretary has been brought to our attention with respect to the case at bar. If such a complaint were to be filed now, it would not nullify the action which plaintiff has already filed, but would merely cut off the right of additional parties to "opt in."

We therefore conclude that a valid class action is available under Count III. It differs from the usual class action in that parties must "opt in", rather than "opt out" as provided in Rule 23(c)(2) F.R.Civ.P.

This is all to the good, as it makes the proceedings more manageable. It also eliminates the objectionable feature of champertous solicitation commented on by Judge Wyzanski in Cherner v. Transitron Electronic Corp., 201 F.Supp. 934, 936–937 (D.Mass.1962). See also Richard Haas, "Professional and Ethical Aspects of Antitrust Class Actions", 41 Antitrust Law Journal (1972) 280–87.

Most cases under the Fair Labor Standards Act are brought by the Secretary, whose investigators scrutinize the employer's books, and undertake calculations of the amounts due, and list the names of the employees to be paid, and

6. Strong social policy militated as a motivation for the *tour de force* effected in Com. v. Brown, 260 F.Supp. 323, 335–336 (E.D.Pa.1966), where pendent jurisdiction served as a device to avoid the effect of Girard College Trusteeship, 391 Pa. 434, 440–442, 138 A.2d 844 (1958), cert. den. 357 U.S. 570, 78 S.Ct. 1383, 2 L.Ed.2d 1546 (1958).

7. Laffey v. Northwest Airlines, 321 F.Supp. 1041, 1042 (D.C.1971), recognizes the propriety of a class action under the Equal Pay Act, limited to a class composed of persons whose rights are not cut off by the statute of limitations, 29 U.S.C. § 255 (two years, unless three years in case of wilful violation).

the Court merely signs a consent decree agreed to by the employer. This is much preferable to a class action, since the executive branch of government can without difficulty employ the necessary personnel to conduct the investigation.[8] It is otherwise with the judiciary. Even if the number of judges could be increased indefinitely, that would not be a good thing. It would dilute the dignity of the office, as Judge Friendly and Judge Wyzanski have ably pointed out.[9] Likewise, the late Justice Frankfurter has aptly observed that multiplication of judges does not necessarily mean multiplication of justice.[10]

Hence, as Judge Friendly urges, it would be helpful if administrative action was made a prerequisite to court consideration of this type of issue.[11] This is "an area in which initial jurisdiction to deal with complaints of discrimination is best lodged elsewhere than in the courts."[12] Protection of individual interests through the action of a public body is also recommended by Judge Medina, long a renowned expert in procedural matters, at one point in his significant opinion in Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 2nd Cir. decided May 1, 1973.

But the existing law seems clear to the effect that the class action under Count III is permissible and must be permitted to proceed.

What of Count I? This presents the most intricate of the issues involved, and would unleash the typical problems of manageability peculiar to class actions if such a proceeding is found to be proper.

Defendant argues that plaintiff has failed to comply with such requirements of prior administrative consideration as Congress has actually imposed under the existing law. A variance between the complaint pursued here and that tendered to the administrative agency is also alleged by defendant.

Title VII of the 1964 Civil Rights Act does impose certain requirements of prior administrative consideration, thus satisfying what Judge Friendly considers desirable. Friendly, Federal Jurisdiction: A General View (1973) 76–77; Love v. Pullman Co., 404 U.S. 522, 523, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

Section 705 of the Act creates an agency known as the Equal Employment Opportunity Commission, commonly called EEOC. 42 U.S.C. § 2000e–4.

Section 706 of the Act (42 U.S.C. § 2000e–5) provides for a period of conciliatory activity by the commission before court proceedings may be initiated.

In a State or locality which has comparable laws and agencies dealing with fair employment practices, no charge may be filed with EEOC until sixty days after invoking the State or local

---

8. Even where a controverted sex issue is litigated, as in Shultz v. Wheaton Glass Co., 421 F.2d 259, 262 (C.A.3, 1970), the action by the Secretary is preferable to a class action when it comes to calculating the damages.

9. Friendly, Federal Jurisdiction: A General View (1973) 28–31; Charles E. Wyzanski, Jr., "An Activist Judge: Mea Maxima Culpa. Apologia Pro Vita Mea", 7 Ga.L.R. (1973) 202, 211.

10. "Multiplying judges by no means multiplies justice." Felix Frankfurter, "The Enforcement of Prohibition", The New Republic, Vol. XXXIII, (Jan. 3, 1923) 149, 150, quoted in Wallace Mendelson

(ed.), Felix Frankfurter: A Tribute (1964) 198.

11. A requirement of prior administrative consideration would also weed out irresponsible litigation by screening the claims in advance of filing suit. Incidentally, it may be noted that under the Civil Rights Act of 1964 as amended by the Act of March 24, 1972, 86 Stat. 105–106, 42 U.S.C. § 2000e–5(f) (1), [1973 pocket parts], the Commission itself (or the Attorney General, when a public agency is defendant) has now been authorized to bring a civil suit on behalf of the aggrieved parties, who are entitled to intervene.

12. Friendly, Federal Jurisdiction: A General View (1973) 84–85.

procedure. A written and signed statement of the facts, sent by registered mail to the State or local authority, is sufficient invocation of that procedure. § 706(b).[13]

Section 706(d) provides that an aggrieved party must file the charge with EEOC within 90 days after occurrence of the alleged unlawful employment practice, except that when the State or local procedure has been followed the filing must be within 210 days after the occurrence, or within 30 days after the State or local agency has terminated its proceedings, whichever is earlier.

Authorization of court proceedings is contained in Section 706(e), 42 U.S.C. § 2000e–5(e). This provided, at the time pertinent here, that if within 30 days after a charge is filed with the commission or 30 days after reference to State or local agencies, no amicable settlement has been reached, the commission shall notify the person aggrieved and "a civil action may, within thirty days thereafter, be brought."

With this statutory scheme in mind, we turn to such facts as the record before us discloses as to the procedural steps taken by plaintiff to process her grievance.

■ We take judicial notice of course that Pennsylvania and the City of Pittsburgh have established so-called "human relations" agencies designed to remedy discriminations in employment; that plaintiff and defendant are from Pittsburgh; and that hence the provisions of Section 706(b) are applicable.

From a stipulation entered into on January 24, 1972, and exhibits attached thereto, it appears that plaintiff tendered to EEOC on March 30, 1971, a

written charge of sex discrimination dated March 26, 1971, alleging September 1, 1970, as the date of the discrimination (Ex.A). On April 7, 1971, EEOC deferred its consideration of the complaint and referred it to the State "human relations" agency (Ex.F), which in turn forwarded it on April 16, 1971, to the city agency in Pittsburgh (Ex.I). What if any action was taken by the city agency regarding this charge does not appear. Nor does it appear what if any action was taken by the city agency regarding a complaint, apparently filed against the defendant by the plaintiff and three other female employees, directly with the city agency on November 20, 1969, charging sex discrimination with respect to retirement age (Ex.B). It is stipulated that Ex. B was the only charge directly filed with a State or local agency by plaintiff against defendant.

■ It thus seems clear that plaintiff did not directly bring her charge dated March 26, 1971, alleging an event of sex discrimination occurring on September 1, 1970, [Ex.A], to the attention of any State or local agency. But it is equally clear that the EEOC forwarded said charge to the appropriate agency for State or local consideration. Thus the policy of Section 706(b) was complied with. Indeed, it seems sensible to conclude, and the Court of Appeals of the Third Circuit and the Supreme Court have held,[14] that the very terms of Section 706(b) are complied with by such ricochet inter-agency reference. The Section does not require that the person aggrieved commence proceedings under the State or local law; it merely provides that no charge may be filed by the person aggrieved before the stated

---

13. In the 1973 pocket parts this becomes subsection (c), giving effect to the renumbering necessitated by the amendments of March 24, 1972, 86 Stat. 104–107. We disregard these changes, since the case at bar was filed August 9, 1971, and is governed by the provisions then in effect. Of course if the case proceeds to

the point of shaping appropriate relief, we shall observe the provisions of subsection (g) as amended.

14. Int. Brotherhood v. United States, 398 F.2d 248, 249 (C.A.3, 1968) ; Love v. Pullman Co., 404 U.S. 522, 525–526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

interval "after proceedings have been commenced" under the State or local law. It does not specify by whom such proceedings must be commenced. Reference by the EEOC is entirely consistent with the requirement stated, as has been seen, in the passive voice.

■ When no results, apparently, were achieved by conciliation or by deference to principles of federalism within the time specified to give an opportunity for State or local handling, and the period of sixty days after March 30, 1971, had elapsed, as required by Section 706(e), the time was ripe for the commission to notify plaintiff of her right to bring a civil action in court. Such notice was sent to plaintiff under date of July 19, 1971 (Ex.L to affidavit of Ralph Allen, Director of EEOC office). This action was filed on August 9, 1971, within the thirty day period prescribed by Section 706(e).

■ When the charge was submitted by plaintiff to EEOC it was filed *sub modo* only, and its inchoate status did not ripen into perfected filing until expiration of the time period prescribed by Congress to permit an opportunity for State or local handling. But when such time expired, the federal filing became a *fait accompli*, without any further action on the part of plaintiff.[15] Int. Brotherhood v. United States, 398 F.2d 248, 252 (C.A. 3, 1968).

The other jurisdictional time limit is that of Section 706(d) with respect to whether the charge was filed[16] with EEOC within 210 days "after the alleged unlawful employment practice oc-

curred." Torockio v. Chamberlain Mfg. Co., 328 F.Supp. 578, 579 (W.D.Pa. 1971). From September 1, 1970, to March 30, 1971, is 193 days. [Perhaps here we should make the same wry disclaimer of arithmetical accuracy which Judge Bailey Aldrich does in Worcester v. C.I.R., 370 F.2d 713, 715 (C.A. 1, 1966).] This time requirement for filing has likewise been met.

Consequently defendant's motion to dismiss Count I for lack of jurisdiction must be denied. With respect to the scope of the cause of action set forth therein, however, we agree with defendant that the contours of the action are coterminous with those of the charge filed on March 30, 1971.

■ This means that the alleged sex discrimination is limited to the issues relating to the alleged fact that "In the fall of 1970 several moves were made within the department, resulting in the advancement of men and the hiring of a new, unexperienced man in jobs for which I am as well or better qualified."

The requirement of Section 706(d), "to ensure expedition in the filing and handling of those complaints",[17] excludes from the scope of the case at bar[18] any similar instances occurring during plaintiff's "span of nine years within the department" or her "total of 24 years of dependable service."

■ Having now focussed upon the precise issues involved in the case at bar, the Court perceives[19] that these are specific issues relating to circumstances personal to plaintiff. We are therefore

---

15. EEOC advised plaintiff that it would "automatically" assert federal jurisdiction on the 61st day following receipt of the charge by the State agency; or if the State terminated its proceedings earlier, or if the statutory time limit was about to expire. Ex. H. to Allen affidavit.

16. By parity of reasoning, we take the date of *inchoate, sub modo* filing as the *terminus ad quem* in computing this period.

17. 404 U.S. at 526, 92 S.Ct. at 619.

18. By this we mean that any other instances of discrimination in the past are not actionable as the basis of the cause of action asserted in the case at bar. We do not mean that evidence of prior acts is inadmissible if relevant for proper purposes. See Rochez Bros. v. Rhoades, 353 F.Supp. 795, 802 n. 20 (W.D.Pa.1973).

19. Until attentively analyzing at this point the contents of plaintiff's charges against defendant, we had suspected that the out-

constrained to conclude that the case at bar with respect to the Civil Rights Act under Count I is of the sort which, under the general criteria heretofore discussed, would not be appropriate for determination in a class action. We therefore determine, under Rule 23(c)(1) and 23(b)(3) that a class action is not "superior to other available methods for the fair and efficient adjudication of the controversy."

This does not mean, however, that we express any opinion as to whether the prevailing practices and policies of defendant are or are not such as to warrant the filing of a class action if a proper foundation is duly laid. We merely hold that the case at bar is not a proper vehicle for such litigation. As we stated recently in connection with another ongoing industrial operation, if there really exists a deep-seated policy or practice of sex discrimination on the part of the defendant gas company, and "this pattern of operation is a recurrent one", it follows that without difficulty "a new case on the same facts can be instituted at any time." United States v. Monongahela Connecting R. R. Co., 351 F.Supp. 696, 699 (W.D.Pa.1972).

Perhaps it may be proper to conclude by quoting another pertinent observation by Judge Wyzanski: "Nothing herein intimates any opinion as to which party to this case has won the more important points. The Court . . . has no view as to what moral weight, i[f] any, the parties attach to the vindication or lack of vindication of the positions they have taken upon the issues raised in this case." [20]

---

come would be a case involving issues of widespread and pervasive policy and practice, appropriate for treatment under the Katz v. Carte Blanche technique. But our application of the Brandeis method, whereby careful factual analysis precedes and governs the formulation of legal conclusions, led to the result here reached. Dumbauld, "Legal Records in English and American Courts", The American Archi-

vist, Vol. XXXVI, No. 1 (January, 1973), 15, 32; Paul Freund, On Understanding the Supreme Court (1949) 50; Charles E. Wyzanski, Jr., "An Activist Judge: Mea Maxima Culpa. Apologia Pro Vita Mea", 7 Ga.L.Rev. (1973) 202, 212–13.

20. Standard Oil Co. v. Markham, 64 F. Supp. 656, 671 (S.D.N.Y.1945).