EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,

v.

DELAWARE TRUST COMPANY,
Defendant.

Civ. A. No. 75-157.

United States District Court,
D. Delaware.

July 7, 1976.

W. Laird Stabler, Jr., U.S. Atty., Dept. of Justice, Wilmington, Del., Delores Wilson, Regional Atty., Frank J. Tuk, Associate Regional Atty., Arneda J. Hazell, Asst. Regional Atty., Equal Employment Opportunity Commission, Philadelphia, Pa., for plaintiff.

John P. Sinclair, of Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Can bureaucratic ineptitude defeat an aggrieved layperson's diligent attempts to file a charge of discriminatory hiring practices with the federal Equal Employment Opportunity Commission (EEOC)? This question is at the heart of the motion for summary judgment presently interposed by defendant Delaware Trust Company in this action brought by the EEOC pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* charging Delaware Trust with discriminatory employment practices based on sex. Defendant's motion, embodying legal arguments originally raised as affirmative defenses, asserts that this Court has no subject matter jurisdiction of the complaint and that plaintiff EEOC has no standing to maintain this action.

The incident giving rise to this suit occurred on September 29, 1971,[1] when one Linda Hsu was interviewed by an official in Delaware Trust's Personnel Department in connection with her application for employment in an administrative position. According to Hsu, the official advised her in the course of the interview that the types of positions which she sought required training and were unavailable to women because of the possibility that pregnancy or a husband's need to change job locations would result in a woman's departure from a position for which she had been trained. Delaware Trust, not contesting Hsu's account of the interview at this stage of the proceedings, contends that it is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56 based solely on Hsu's alleged failure to bring the matter to the attention of the EEOC and its counterpart state agency within the deadlines incorporated in Title VII's procedural framework, described below.

Prior to March 24, 1972, Title VII required that a charge be filed with the EEOC within 90 days of the occurrence of an alleged unlawful employment practice *except* in instances where the aggrieved party had initially instituted proceedings with a state or local agency authorized to obtain civil or criminal relief from the practice. In those cases, a charge was to be filed with the EEOC "within two-hundred and ten days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency [had] terminated the proceedings under the State or local law, whichever is earlier, . . ." 42 U.S.C. § 2000e–5(d) (1970).[2] Moreover, in states

---

1. Confusion concerning dates and times pervades this case. All parties agree that the interview occurred on September 29, 1971. However, a copy of Hsu's original complaint letter dated October 4th, describes the interview as having taken place on October 30th—a chronological impossibility. At another point, the Commission notes that it ultimately received Hsu's letter on March 1, 1972, while Delaware Trust fixes February 28, 1972, as the receipt date. None of these discrepancies are material to the outcome of Delaware Trust's motion.

2. In the amendments to Title VII, effective March 24, 1972, the time periods of subsection (d) were extended from 90 to 180 and from 210 to 300 days respectively, and the subsection itself was re-designated as (e). This amended and relettered subsection, otherwise the same as its predecessor (except for the addition of a provision requiring notice to the charged party within ten days), presently provides as follows:

   "(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially insti-

where the specified state or local agency existed, the law barred aggrieved parties from filing a charge with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, . . ." 42 U.S.C. § 2000e–5(b) (1970).[3] *See generally,* 4 A.L.R.Fed. 833 (main text discusses interpretation of filing requirements through 1970).

Delaware, the locus of Hsu's complaint, maintains an agency to entertain complaints alleging discrimination in employment. *See* 19 Del.C. § 711 *et seq.* The Delaware statute provides that charges "must be filed within 90 days after the alleged unlawful employment practice . . . ." 19 Del.C. § 712(d). Recognizing that lay persons might be confused by the availability of dual enforcement mechanisms, the EEOC developed a method for referring complaints to state agencies while simultaneously holding them in "suspended animation"—ready to be formally filed as charges as the close of either the state

proceedings or the 60 day state deferral period mandated by Title VII. The Supreme Court specifically approved this procedure in *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), over objection that it constituted a manipulation of the filing date not sanctioned by the applicable state statute or regulations.

Amendments to Title VII effective as of March 24, 1972, provide that, for charges pending with the EEOC on that date or filed thereafter, the Commission may bring a civil action based on violations uncovered in its investigation of a charge no sooner than thirty days from the date of filing of the charge if it is unable to secure an acceptable conciliation agreement.[4] As the party aggrieved by the alleged unlawful employment practice, a charging party such as Hsu would have the right to intervene in the case brought by the EEOC pursuant to the charge. 42 U.S.C. § 2000e–5(f)(1) (Supp. IV).

In the instant case, the defendant's objections to the standing of the EEOC and this

---

tuted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." 42 U.S.C. § 2000e–5(e) (Supp. IV).

**3.** This section corresponds to present subsection (c) set out below:

"(c) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-

day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority." 42 U.S.C. § 2000e–5(c) (Supp. IV).

**4.** See 42 U.S.C. § 2000e–5(f)(1) (Supp. IV). Section 2000e–5(f)(1), an amended version of prior section 2000e–5(e), gave the Commission this new power to initiate civil actions based on charges brought before it by aggrieved private persons. Congress declared that the amendments would be "applicable with respect to charges pending with the Commission on the date of enactment . . . and all charges filed thereafter." Act of March 24, 1972, Pub. L.No.92–261, § 14, 86 Stat. 103; see *Davis v. Valley Distributing Co.,* 522 F.2d 827, 830–32 (9th Cir. 1975), *petition for cert. filed* 44 U.S. L.W. 3404 (Dec. 13, 1975) (No. 75–836); *EEOC v. E. I. duPont de Nemours,* 516 F.2d 1297, 1298 (3d Cir. 1975).

Court's jurisdiction essentially derive from the abnormal delays which initially attended the processing of Hsu's complaint in accordance with the scenario just described.

There is no dispute that on October 4, 1971, several days after her interview, Hsu wrote a letter to the EEOC which described the facts surrounding her application and interview and stated her desire "to register a complaint with the federal agency against the Delaware Trust Bank . . ." for discrimination based upon sex. Hsu's deposition testimony and Xerox copies in the record indicate that the letter was mailed, postage prepaid, (postmarked October 6th) to "Equal Employment Opportunity Commission, 1421 Cherry Street, Philadelphia, Pennsylvania." The Commission speculates that it was addressed to the Philadelphia Office because there was no Delaware EEOC office to which it could have been sent. According to an affidavit submitted by an official in the EEOC's Philadelphia office, the Commission had maintained an "outpost" office at the address used by Hsu until June 5, 1971, when it established a "regional" office at another address several blocks away in downtown Philadelphia. Inexplicably, the Postal Service did not forward the letter, but simply returned it marked "R'MD No Add."[5] Undaunted, on October 19th (postmarked October 22nd), Hsu sent a second letter addressed to the "Federal Department of Labor, Equal Opportunities for Employment Division (Complaint Department), Washington, D. C." She enclosed a copy of her original letter, noted her inability to find another address listing for the EEOC, and concluded with a plea for "assistance in passing my complaint to the right office."[6] This second letter was unaccountably routed to the Office of Federal Contract Compliance (OFCC) which received it on October 28, 1971. The OFCC is an agency under the aegis of the Department of Labor concerned with compliance by federal government contractors with federal anti-discrimination laws. For reasons not explained and not apparent in the record, the OFCC did not transmit Hsu's letter to the EEOC's Baltimore regional office until February 28, 1972, four months after its receipt.

The EEOC acted with dispatch when it finally received Hsu's letter. On March 1st, it was transmitted to the appropriate Delaware agency. By letter dated March 9th, Norman A. Barron, Project Director, Delaware EEOC Project (a part of the Delaware Department of Labor), informed the EEOC that "This Agency waives jurisdiction of your cases TBA2–0570, and TBA2–0571." TBA2–0570, the EEOC's designation for Hsu's complaint against Delaware Trust,[7] was thereupon reactivated and formally filed as a charge with the EEOC on March 13, 1972, in accordance with the procedures approved in Love v. Pullman, supra. From that point on, the administrative wheels turned smoothly culminating in the filing of this action.

Delaware Trust contends that the EEOC's diligence was for naught because Hsu's complaint was not presented to the Delaware deferral agency within the ninety day time limit set by the applicable Dela-

5. The EEOC asserts that the affidavit includes a statement that "the removal address and date of removal was communicated to the appropriate United States Post Office." EEOC Memorandum at 6. No such statement is found in the affidavit supplied to the Court. See Docket No. 26A, Appendix H.

6. Hsu testified in her deposition that, upon return of her initial letter to the EEOC, she "decided to send it to the Department of Labor, the equal—I didn't know that there was an Equal Employment Opportunity Division with the Department of Labor, but I sent it to them with that on the envelope, hoping that they would deliver it to the proper division." Docket No.

10 at 21. It does not seem unreasonable for a layperson such as Hsu, seeking assistance concerning an instance of possible discrimination in job hiring, to write to the federal Department of Labor after receiving a cryptic postal rebuff to her first attempt to register a complaint with the nearest EEOC office.

7. Hsu's letter to the EEOC contained two separate complaints of discrimination. One, against Delaware Trust, was designated TBA2–0570, while the other, against a Delaware employment agency, received number TBA2–0571. The instant case concerns only the complaint against Delaware Trust.

ware statute,[8] and therefore ran afoul of Title VII's state deferral requirement. This Court has recognized previously the general proposition presently asserted by Delaware Trust that the appropriate state agency must be given a meaningful opportunity to act on a discrimination complaint before jurisdiction over a Title VII complaint can vest in the EEOC and, ultimately, in the federal courts. *Berger v. General Motors Corp.*, Civil Action No. 4304 (D.Del. Nov. 7, 1974) (and cases cited therein); *see Richardson v. Miller*, 446 F.2d 1247, 1248 (3d Cir. 1971). *See also Goger v. H. K. Porter Co.*, 492 F.2d 13 (3d Cir. 1974) (construing analogous requirements of Age Discrimination in Employment Act).

■ Defendant, relying upon *Dubois v. Packard Bell Corp.*, 470 F.2d 973 (10th Cir. 1972), urges that no meaningful deferral occurred here. This contention is meritless. In *Dubois*, the New Mexico agency actually "rejected the complaint as untimely under the 90-day filing period" mandated by the state statute, and the federal court consequently ruled that the untimely state deferral had deprived the New Mexico Commission of a "bona fide opportunity to consider or act upon . . ." the complaint. *Id.* at 975. That is not the instant case. Delaware's agency did not reject the deferral of Hsu's complaint as untimely, but simply "waived" jurisdiction over it. While this response may be cryptic, the use of waiver terminology necessarily implies that the Delaware agency felt it had jurisdiction, but was choosing not to exercise it. Certainly, a state agency's judgment that it has been given a meaningful opportunity to act on a discrimination complaint is entitled to

considerable if not conclusive weight. No useful purpose would be served if this *federal* court were to attempt to second guess the disposition of Hsu's complaint under *state* law by a competent *state* administrative agency. *See Ortega v. Construction & General Laborers' Union*, 396 F.Supp. 976, 982 (D.Conn.1975). Established principles of comity militate strongly against such a needless excursion and it will not be undertaken.[9]

Similarly, the instant facts are distinguished from those found in cases where there was no attempt at state deferral and consequently no opportunity for the state agency to decide whether to consider a complaint on its merits. *See, e. g., Richardson v. Miller*, 446 F.2d 1247, 1249 (3d Cir. 1971) (*pro se* plaintiff failed to file charge with either federal or state agencies); *Corne v. Bausch and Lomb, Inc.*, 390 F.Supp. 161, 164 (D.Ariz.1975) (total failure by EEOC to recognize jurisdiction of state deferral agency); *Berger v. General Motors Corp.*, *supra* at 7 (plaintiff failed to make known his desire to have Delaware agency pursue matter); *Abshire v. Chicago & Eastern R. R. Co.*, 352 F.Supp. 601, 604–05 (N.D.Ill.1972) (EEOC and plaintiff failed to file charges with state commission). *See also Goger v. H. K. Porter Co.*, *supra*, at 15 (3d Cir. 1974) (plaintiff under analogous age discrimination statute failed to file complaint with appropriate state agency prior to institution of federal suit).

■ Having surmounted the hurdle of meaningful state deferral, there still remains the issue of the timeliness of Hsu's EEOC charge under the federal statute

---

8.   19 Del.C. § 712(d).

9.   However, it is not difficult to hypothesize several factors which might have motivated the Delaware agency's apparent view that Hsu's letter was not untimely. It may have applied a tolling provision, taking into account the aberrant odyssey which Hsu's letter had traveled. Or it may have construed Hsu's complaint as alleging "continuing violations" coming within the applicable 90-day time limit—much as continuing violations are sometimes construed under the federal statute. In *Ortega*, cited in the text, the district court refused to look behind

the actions of the Connecticut anti-discrimination agency, but did speculate that considerations such as those just discussed might have influenced the agency's action in considering a possibly untimely complaint on its merits. 396 F.Supp. at 982 and n. 8; *see Tidwell v. American Oil Co.*, 332 F.Supp. 424, 3 E.P.D. ¶ 8022 (D.Utah 1970) (plaintiff entitled to rely on state official's construction of state statute); *see also Presseisen v. Swarthmore College*, 386 F.Supp. 1337 (E.D.Pa.1974) (state complaint was timely because alleged discrimination of continuous nature).

since a timely filing with the EEOC is also a prerequisite to the commencement of a federal action. *Wetzel v. Liberty Mutual Insurance Co.*, 511 F.2d 199, 202 (3d Cir. 1975), *rev'd on other grounds*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *see Richardson v. Miller, supra* at 1248. Treatment of this issue begins with recognizing that, "Courts have continuously construed Title VII so as not to allow procedural technicalities to bar a claim under the Act." *Wetzel v. Liberty Mutual Insurance Co., supra* at 202. *See Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975) ("rigid insistence on meticulous observance of technicalities unrelated to any substantive purpose is inappropriate.").

With these considerations in mind, several factors lead to the conclusion that Hsu's charge was filed timely. One derives from the date that her complaint letter was received by the OFCC, October 28, 1971—within a month of the alleged discriminatory act. Delaware Trust, citing *EEOC v. Collator Corp.*, 8 E.P.D. ¶ 9454 and ¶ 9455 (W.D.Wash.1973), argues that a timely letter to the OFCC cannot vest jurisdiction in the EEOC. This view ignores the plight of a layperson attempting to weave his or her way through a maze of bureaucratic agencies and acronyms. The view of the Washington District Court has apparently been rejected by the Ninth Circuit which reversed (without opinion) the district court holding that a timely letter to the OFCC could not constitute adequate compliance with the EEOC filing requirements of Title VII. *EEOC v. Collator Corp.*, 8 E.P.D. ¶ 9481 (9th Cir. 1974). Moreover, it is contrary to the recent statement of the Second Circuit interpreting "filing with the OFCC as constituting a filing with the EEOC." *Egelston v. State University College at Geneseo*, 535 F.2d 752, at 755 n.4 (2d Cir. 1976).

Delaware Trust makes the technical argument that receipt of Hsu's charge by the federal agency could have no effect until after a state deferral had taken place. This contention, while superficially appealing, is unacceptable. There is substantial authority for the proposition that even an informal filing of a complaint with the federal agency stays the running of the applicable federal time limitation from the date of initial federal arrival (here, October 28, 1971) until such time as state deferral terminates (here, March 9, 1972). *See Richard v. McDonnell Douglas Corp.*, 469 F.2d 1249 (8th Cir. 1972); *Anderson v. Methodist Evangelical Hospital*, 464 F.2d 723 (6th Cir. 1972); *Vigil v. American Telephone & Telegraph Co.*, 455 F.2d 1222 (10th Cir. 1972); *cf. Lamont v. Forman Bros., Inc.*, 410 F.Supp. 912, 916 (D.D.C.1976). *Contra Moore v. Sunbeam Corp.*, 459 F.2d 811, 825–26 and n. 37 (7th Cir. 1972). Thus, if tolling of the 90 day period by reason of informal filing were accepted, Hsu's charge would be deemed filed within the 90 day deadline then applicable under Title VII.[10]

Even if the October 28th receipt of the letter by the OFCC would not constitute a pre-deferral federal *"filing,"* staying application of the federal deadline until state deferral terminated, it can still be construed in a somewhat similar manner as an intervening occurrence which precipitated an equitable "tolling" of the deadline for the filing of a charge with the EEOC. This view was adopted in *EEOC v. Nicholson File Co.*, 408 F.Supp. 229, 233 (D.Conn.1975), where the Court interpreted Title VII's "jurisdictional" prerequisite deadlines "as the equivalent of a statute of limitations" and concluded that they were tolled when the plaintiff submitted her complaint to the OFCC which dallied seven months before transmitting it to the EEOC.[11]

---

**10.** Such a tolling may have been applied silently in *Bradford v. Peoples Natural Gas Co.*, 60 F.R.D. 432 (W.D.Pa.1973), where a charge was deemed timely based on the date on which the EEOC had informally received it prior to its state deferral.

**11.** The *Nicholson* court reasoned that the charging party's filing with the OFCC did not constitute an election of an alternate remedy since one of the OFCC's functions is to channel a complaint to the federal agency—such as the EEOC—which is best equipped to investigate it. 408 F.Supp. at 234. In Hsu's case, no

When one takes into account the remedial purpose of Title VII and the fact that complaints by aggrieved citizens are crucial to its implementation, the circumstances beyond Hsu's control which delayed the filing of her grievance should not be used to defeat a statutory right. To do otherwise would be to premise Hsu's right to file a charge on the vagaries of the Postal Service and the federal bureaucracy. As the Supreme Court observed in *Love v. Pullman, supra* :

> "Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." 404 U.S. at 527, 92 S.Ct. at 619.[12]

I find more appropriate the flexible approach taken in *Nicholson* and other cases where Title VII's time requirements have been analogized to statutes of limitation and compliance with them has been examined in light of intervening occurrences or "fortuitous" events present in a particular

case. *Cf. Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975); *Franks v. Bowman Transp. Co.*, 495 F.2d 398 (5th Cir. 1974); *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888 (5th Cir. 1970). *But see Guy v. Robbins & Myers, Inc.*, 525 F.2d 124 (6th Cir. 1975).[13]

■ In summary, whether receipt of Hsu's charge by the OFCC constituted a "constructive" filing with the EEOC, or simply tolled the running of the ninety days until actual receipt of the letter by the EEOC, I conclude that HSU's charge met the federal statutory prerequisites for filing with the EEOC.[14] Having concluded that the charge was timely and therefore properly pending before the EEOC on March 24, 1972, the date on which the amendments to Title VII went into effect, Delaware Trust's objection to the EEOC's standing as plaintiff in this case must fail. The amendments to Title VII, giving the Commission its new standing to bring suit in its own name on citizens' charges not resolved by administra-

question of election can arise since her efforts were initially directed toward the EEOC itself.

**12.** This view was recently echoed in expanded form by the Second Circuit in *Egelston v. State University College at Geneseo*, 535 F.2d 752, 754–55 (2d Cir. 1976):

> "Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen. Were we to interpret the statute's procedural prerequisites stringently, the ultimate result would be to shield illegal discrimination from the reach of the Act. Prior decisions, both of the Supreme Court and of this Circuit have, for this reason, taken a flexible stance in interpreting Title VII's procedural provisions. We follow this realistic approach today. . . ." [footnotes omitted].

**13.** The Commission has explicitly conceded that it "does not rely on the 210 days which may be applied under Section 706(d) of Title VII when the complaint has been filed first with a state deferral agency." Docket No. 26 at 17. This disclaimer avoids the issue raised in *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1232–33 (8th Cir. 1975) (en banc) where the Court held that even an·aggrieved party in a deferral state must initially file a charge with the state agency within Title VII's shorter nondeferral deadline (here, 90 days) on the theory

that the mere existence of a state deferral agency should not gratuitously entitle a complainant to extra days in which to file his complaint *somewhere. Id.* This view has not been universally adopted. *See Davis v. Valley Distributing Co., supra* (reserving the issue but noting that the EEOC's interpretation is contrary to *Olson* ); *Bradford v. Peoples Natural Gas Co.*, 60 F.R.D. 432 (W.D.Pa.1973), (apparent assumption that longer 210-day limit applies to complaint filed with state agency over 200 days after alleged discrimination). In Hsu's case, the finding of a timely state filing, absent *Olson*, applied in tandem with the 210 day federal deadline arguably applicable in deferral state situations, would result in the upholding of the timeliness of her federal filing. In light of the EEOC's eschewal of this rationale, it is merely stated as an alternative to the other timeliness possibilities discussed above.

**14.** In light of this result, I need not consider another EEOC contention, raised at the close of oral argument and in a subsequent letter to the Court and Delaware Trust, that Hsu's charge comes within the "continuing violation" exception to the 90 day requirement. *See Egelston v. State University College at Geneseo, supra* at 755; *Kohn v. Royall, Koegel & Wells*, 59 F.R.D. 515 (S.D.N.Y.1973), *app. dis.*, 496 F.2d 1094 (2d Cir. 1974). *See also Presseisen v. Swarthmore College*, 386 F.Supp. 1337 (E.D.Pa.1974).

tive processes[15] were made applicable by Congress to "charges pending with the Commission on the date of enactment of this Act. . . ." That date was March 24, 1972.[16] Hsu's charge had been properly "pending" since at least its formal filing with the Commission on March 13th—if not before.

Therefore, Delaware Trust's motion for summary judgment will be denied.

**15.** 42 U.S.C. § 2000e–5(f)(1).

**16.** Act of March 24, 1972, Pub.L.No.92–261, § 14, 86 Stat. 103.

In its post-argument letter to plaintiff's counsel and the Court, the EEOC also cited *Davis v. Valley Distributing Co., supra.* In *Davis,* the Ninth Circuit held that the post-amendment 180 day time limitation rather than the original 90 day limit for filing with the EEOC applied to a charge which was not formally filed until several days after the amendments went into effect. The Court relied on the language making the amendments effective as to all charges filed *after* March 24th. However, it explicitly declined to speculate on whether the fact that the amendments also applied to charges "pend-

ing" before the EEOC on the effective date would serve to keep alive a claim (such as Hsu's) which was within the new 180 day period but which might already have run afoul of the previous 90 day rule. 522 F.2d at 831–832. In light of the result reached *supra* that Hsu's charge was filed within the pre-amendment time limitations, the EEOC's invitation to enter this murky area is declined. *But cf. Guy v. Robbins & Meyer, Inc.,* 525 F.2d 124 (6th Cir. 1975) (dissent argues that *Davis* issue was not considered and should have been presented to district court). A petition for certiorari in *Davis* has been filed with the Supreme Court. 44 U.S.L.W. 3404 (No. 75–836 Dec. 13, 1975).