**Judy C. EGELSTON, Plaintiff-Appellant,**

**v.**

**STATE UNIVERSITY COLLEGE AT GENESEO et al.,**
**Defendants-Appellees.**

**No. 1050, Docket 76–7047.**

United States Court of Appeals,
Second Circuit.

Argued June 4, 1976.

Decided June 7, 1976.

Emmelyn Logan-Baldwin, Rochester, N. Y., for plaintiff-appellant.

Dominick J. Tuminaro, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., New York City, on the brief), for defendants-appellees.

John Schmelzer, Washington, D. C., Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, and Charles L. Reischel, Washington, D. C., for the Equal Employment Opportunity Commission, appearing as amicus curiae urging reversal.

Before KAUFMAN, Chief Judge, CLARK, Associate Justice,* and TIMBERS, Circuit Judge.

IRVING R. KAUFMAN, Chief Judge:

Occasionally, there is a tendency on the part of a judge to attempt to avoid a trial where it appears to him *ab initio* that the trial might be a waste of time or of no avail to the plaintiff. With the crowded dockets and delay occasioned by oppressive judicial workloads, a judge may well overlook the fact that a complaint states a valid cause of action or, out of a desire to eliminate an action which he considers frivolous, dismiss it before the curtain has risen on the case. Such conditions may have impelled Judge Burke to dismiss Dr. Judy Egelston's Title VII complaint upon its face and without more. But it is important that we emphasize the principle that our concern for efficiency must never be permitted to outweigh our concern for individual rights—particularly when the bare allegations of a complaint, read in a light most favorable to the plaintiff, (as we must at this posture of the case) state a valid claim. Accordingly, we reverse the dismissal and remand for further proceedings.

I.

Dr. Egelston's complaint provides the sparse factual record for this appeal. In September, 1970 Dr. Egelston was hired by State University College at Geneseo (Geneseo) as an assistant professor in the Division of Educational Studies. Her teaching contract was due to expire in June, 1973. In March, 1972, the faculty's tenure committee recommended that the contract be renewed, yet Geneseo's administration decided not to extend it. No reasons for this decision were given and, although the protests of the tenure committee were registered, reconsideration was refused. On May 15, 1972, Dr. Egelston was notified of the deci-

---

* United States Supreme Court, retired, sitting by designation.

sion, and she continued to teach at Geneseo until her contract expired in June, 1973.

Several months earlier, on January 24, 1973, Dr. Egelston, *pro se,* filed a charge with the Office of Federal Contract Compliance (OFCC). Two weeks later, she filed a complaint with the New York State Division of Human Rights which, after investigation, found probable cause to believe that her termination was improperly motivated.

Meanwhile, after obtaining a right-to-sue notice from the Equal Employment Opportunity Commission (EEOC), Dr. Egelston brought suit in the Western District of New York against Geneseo pursuant to 42 U.S.C. § 2000e–5(f).[1] In her complaint, she alleged that her discharge had been motivated by her sex; that throughout her employment she was paid less than males performing similar work; and that after her discharge, and as a result of her complaint to the OFCC, neither she nor her husband were able to find employment within New York's State University system. Her complaint further stated that all this was but a manifestation of the college's practice of excluding women from certain job classifications, paying them lower salaries than their male counterparts, precluding them from admission to training programs, and denying them promotions and transfers.

Before an answer was even filed, the defendants moved to dismiss, contending that Dr. Egelston had failed to comply with the requirements of 42 U.S.C. § 2000e–5(e). This section provides that a charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred, unless the complainant "has initially instituted proceedings with a State or local agency." In the latter case, the time period is expanded to 300 days.

Judge Burke granted the motion to dismiss. The portion of his brief memorandum dealing with Dr. Egelston's Title VII claims is quoted in its entirety:

The complaint herein was filed January 6, 1975. [We note, parenthetically, that this was the date on which suit was filed in the District Court; the relevant date, of course, was that on which a charge was filed with the agency.] The plaintiff has not complied with the time limitations contained in 42 U.S.C. 2000(e)5. In the circumstances of this case the statute requires filing within 180 days after the alleged unlawful employment practice occurred.

## II.

■ It is well to set forth at the outset several general considerations that guide our disposition of this appeal. In our recent opinion in *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975), we emphasized that summary judgment must be used sparingly "since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." Dismissal of a complaint—before any discovery has taken place or an answer filed—is even more drastic. It is a device that must not be employed unless, taking as true the allegations pleaded, *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

There is an additional factor equally vital to the resolution of this case. Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen. Were we to interpret the statute's procedural prerequisites stringently, the ultimate result would be to shield illegal discrimination from the reach of the Act. Pri-

---

1. The complaint also grounded jurisdiction in 42 U.S.C. § 1983 and the Fourteenth Amendment. Since we hold that appellant has stated a valid cause of action under Title VII, we need not consider these alternate bases for jurisdiction. *See Acha v. Beame,* 531 F.2d 648, 656 (2d Cir. 1976).

or decisions, both of the Supreme Court[2] and of this Circuit[3] have, for this reason, taken a flexible stance in interpreting Title VII's procedural provisions. We follow this realistic approach today.

■ Viewed in this light, dismissal of Dr. Egelston's complaint was clearly improper. In her complaint, she alleged several acts of discrimination as to which her January 1973 filing was timely.[4] Dr. Egelston claimed that she was paid a salary lower than her male peers until she left Geneseo in June, 1973, and that SUNY had improperly refused to rehire her and her husband after that date. *Cf. Weise v. Syracuse Univ.,* 522 F.2d 397, 409 (2d Cir. 1975).

■ Dr. Egelston's primary grievance, of course, is rooted in her discharge. Judge Burke apparently assumed that, as to this element of the complaint, the statute's time limit was triggered when Dr. Egelston was notified in May 1972 that her contract would not be renewed. We do not agree. Appellant's discharge was consummated only when she left the university—or, possibly, when a replacement was hired. *See Gates v. Georgia-Pacific Corp.,* 492 F.2d 292, 294–95 (9th Cir. 1975); *Johnson v. University of Pittsburgh,* 359 F.Supp. 1002, 1007 (W.D.Pa.1973).

■ One final reason remains to prevent us from regarding Dr. Egelston's complaint as time-barred. She alleges that the discrimination against her was not an isolated act, but rather constituted a part of the college's continuing policy to deny women access to its upper echelons. And, at the time of filing, Dr. Egelston was still an employee of the college injured by the practice. A principal purpose of a statute of limitations is to bar stale complaints; yet, according to Dr. Egelston's complaint, the discriminatory policy here was still fresh. These allegations of continuing discrimination are sufficient to constitute a timely filing with the agency. *See, e. g., Macklin v. Spector Freight Systems, Inc.,* 156 U.S. App.D.C. 69, 478 F.2d 979, 987 (1973); *Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir. 1975); *Belt v. Johnson Motor Lines, Inc.,* 458 F.2d 443 (5th Cir. 1972); *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 518–19 (S.D.N.Y.1973), appeal dismissed 496 F.2d 1094 (2d Cir. 1974); *cf. United States v. Sheet Metal Workers International Assn.,* 416 F.2d 123 (8th Cir. 1969). *See also* Developments—Title VII, 84 Harv.L.Rev. 1109, 1210 (1971).

It may well be, of course, that appellant will be unable to demonstrate the existence of a policy of discrimination. Indeed, she may fail to prove that her own discharge was improperly motivated. These issues are, however, best decided after trial—or, at the very least, upon a motion for summary judgment, Fed.R.Civ.P. 56, perhaps after discovery has taken place. But, they cannot be resolved upon a motion to dismiss this complaint. That Dr. Egelston may ultimately not prevail in her claims does not justify denying her the opportunity to litigate them.[5]

2. *See, e. g., Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Cf. also *Brown v. GSA,* —— U.S. ——, 96 S.Ct. 1961, 48 L.Ed.2d 402, 44 U.S.L.W. 4704 (1976). We note that Congress has subsequently approved of the approach taken in *Love v. Pullman. See* 1972 U.S.Code Cong. and Adm.News at 2181.

3. *See, e. g., Weise v. Syracuse Univ.,* 2 Cir., 522 F.2d 397, 412 (1975); *Voutsis v. Union Carbide Corp.,* 2 Cir., 452 F.2d 889, 892 (1971).

4. We consider the filing with the OFCC as constituting a filing with the EEOC. This holding is in keeping with EEOC practice, to which we must accord "considerable deference", *Voutsis v. Union Carbide, supra,* at 892, as well as with the flexible approach toward filing re-

quirements taken in *Love v. Pullman, supra. See also EEOC v. Nicholson File Corp.,* 408 F.Supp. 229, 236 (D.Conn.1976). And we find the filing sufficiently specific to constitute a proper Title VII charge. *See Jenkins v. United Gas Corp.,* 400 F.2d 28, 30 n. 3 (5th Cir. 1968); *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355 (6th Cir. 1969).

5. In view of our disposition of this case, we need not consider appellant's alternative argument that the 300-day time limit, rather than the 180-day period, applies to her. Nor need we—or do we—resolve the still-open question of whether these time requirements for filing *with the agency* are "jurisdictional prerequisites" to suit in the Federal Courts. *See Reeb v. Economic Opportunity Atlanta, Inc.,* 516

Reversed and remanded.[6]

F.2d 924 (5th Cir. 1975); *EEOC v. Nicholson, supra.*

**6.** We are also today reversing Judge Burke's dismissal of the complaint in a similar action, *Noble v. University of Rochester.* The Chief Judge of the Western District may wish to discuss with Judge Burke the desirability of reassigning these cases to a judge with a less burdensome calendar.