Lorraine A. KRZYZEWSKI, Plaintiff-Appellant Cross-Appellee,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Metropolitan Nashville-Davidson County Police Department, Joe Casey, James C. Abernathy, Defendants-Appellees Cross-Appellants.

Nos. 77–1091, 77–1092.

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1978.

Decided Oct. 3, 1978.

George E. Barrett, Charles R. Ray, Barrett & Barrett, P. C., Nashville, Tenn., Lutz Alexander Prager, Washington, D. C., Leopoldo Fraga, Jr., EEOC, Washington, D. C., for plaintiff-appellant cross-appellee.

Lorraine Krzyzewski, for E.E.O.C. as amicus curiae.

Donald W. Jones, Metropolitan Dept. of Law, Nashville, Tenn., for defendants-appellees cross-appellants.

Before PHILLIPS, Chief Judge, and LIVELY and KEITH, Circuit Judges.

LIVELY, Circuit Judge.

This is a Title VII action charging discrimination on the basis of sex. Following a bench trial on all issues raised by the pleadings the district court dismissed the action for failure of the plaintiff to file a charge with the Equal Employment Opportunity Commission (EEOC) within the time prescribed by the statute.[1] The Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, requires the filing of a charge in the following language:

A charge under this section shall be filed within one hundred and eighty days

---

1. Plaintiff also sought relief for alleged deprivation of various constitutional rights, relying on the First, Fourth, Ninth and Fourteenth Amendments and 42 U.S.C. § 1983. The district court also dismissed all of these claims and plaintiff has not appealed from that portion of the judgment.

after the alleged unlawful employment practice occurred . . . . 42 U.S.C. § 2000e–5(e) (1970 ed. Supp. V).

The dispute in this case centers on the question of when the "alleged unlawful employment practice occurred."

The plaintiff, an unmarried woman, was employed by the Nashville police department on January 1, 1974 and began training at the police academy on April 1, 1974. She was graduated from the academy as a patrol officer on August 9, 1974 and assigned, at her request, to the "south station." Under applicable civil service regulations plaintiff was in a probationary status for six months after August 9th during which her performance and aptitude were subject to periodic reviews.

On August 14th plaintiff and a male officer were told to report to the chief of police, the defendant Casey. In the presence of several other high ranking officers Casey told plaintiff and the male officer that he had received complaints that they were seeing each other socially and that this was a violation of regulations. Casey referred specifically to the following police department rule:

A member shall always conduct himself in accordance with the highest degree of morality which is required of the law enforcement profession. He shall not act in a manner which will reflect discredit upon himself, the Metropolitan Police Department or the Metropolitan Government.

Both parties were also advised that there was an "unwritten rule" that unmarried and married police officers of the opposite sex should not socialize together on their off-duty time. The plaintiff admitted that she and the male officer had begun seeing each other while she was still in training and had continued to do so after she learned that he was married. She stated that they were in love, "and he meant more to me than the job did even."

The following day, August 15th, plaintiff returned to the chief's office and was told that she was being terminated, effective that day. She asked if she could have the holidays and "off days" she had accrued and was told she would be paid to August 29th for this accrued time. At this interview she was told that her male friend had been suspended for ten days without pay on the same charge for which she had been discharged. Plaintiff testified she was not satisfied with this treatment and employed counsel.

Plaintiff filed a complaint with EEOC on February 18, 1974, charging that she was fired because she was a woman. The EEOC charge was timely if August 29, 1974 was the date of the "alleged unlawful employment practice," but was out of time if August 15th was the date of the controlling event. The defendant Casey signed a "change of status" form on August 15, 1974 which reflected plaintiff's dismissal on charges of conduct unbecoming a police officer. This form showed August 15th as the last day worked and August 29th as the effective date of termination and noted that plaintiff was being paid for nine days of accrued time. The compensation for accrued time was effected by carrying plaintiff on the payroll for nine working days (and two weekends) after her last day of work and paying her at the end of that period. The plaintiff received no written notice of her termination.

Both the plaintiff and EEOC, as *amicus curiae*, urge us to reverse the district court and to hold that August 29th was the date of the occurrence which triggered the 180-day filing deadline. They rely principally on the decision in *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92 (8th Cir. 1975). *Moses* was an age discrimination case. The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, contains a requirement that no action may be filed in a district court unless the person who claims discrimination gives the Secretary of Labor 60 days notice of intent to file such action. This notice must be given "within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1). The plaintiff Moses was advised of her discharge on November 12, 1973; her final day of work was November

16th and she was paid for accrued vacation through November 30th, the date she was "administratively terminated." Her notice to the Secretary of Labor was filed within 180 days of November 30th, but was more than 180 days after November 12th and 16th.

Citing the remedial nature and humanitarian purposes of ADEA, the court of appeals reversed the district court's dismissal of the Moses action. The court of appeals found that the 180-day language created "procedural ambiguities" which should be resolved in favor of the complaining party. The court also concluded that no goal of the ADEA would be furthered by construing the notice requirement narrowly. Finally the court held that the date of administrative termination is easily ascertainable and doubt as to the effective date would be removed by accepting the date of administrative termination shown in the records of the employer as the date of the allegedly unlawful employment practice.

The decision in Moses cannot be reconciled with Greene v. Carter Carburetor Co., 532 F.2d 125 (8th Cir. 1976). Greene was a Title VII case in which the plaintiff was discharged on February 6, 1970 and did not work after that date. He was continued on the payroll until March 3, 1970, "likely because of fringe benefits." The court held that the time for filing a charge with EEOC ran from February 6th citing its earlier en banc decision in Olson v. Rembrandt Printing Co., 511 F.2d 1228 (8th Cir. 1975). Moses is not referred to in the Greene opinion.

We think the better rule is one which seeks to determine when the alleged unlawful employment practice actually occurred rather than accepting the administrative date shown on an employee's personal or payroll records. Thus we are in agreement with the following statement in Bonham v. Dresser Industries, Inc., 569 F.2d 187, 191–92 (3d Cir. 1977), appeal pending, 46 U.S. L.W. 3695 (June 9, 1978):

> Although no simple rule can be formulated which will deal adequately with all factual situations, where unequivocal no-

tice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits such as periodic severance payments or extended insurance coverage. See Davis v. RJR Foods, Inc., 420 F.Supp. 930, 931 n. 1 (S.D.N.Y. 1976), aff'd without opinion, 556 F.2d 555 (2nd Cir. 1977); Doski v. M. Goldseker Co., 11 FEP Cas. 468 (D.Md.1975), aff'd in relevant part and remanded, 539 F.2d 1326, 1328 n. 3 (4th Cir. 1976); Payne v. Crane Co., 560 F.2d 198, 199 (5th Cir. 1977) (per curiam).

We reject the rule propounded in Moses v. Falstaff Brewing Corp., 525 F.2d 92 (8th Cir. 1975), which looks exclusively to the company's official termination date as reflected in company records. Because, as in the case sub judice, a company may use different termination dates for different purposes, the Moses rule does not adequately resolve the issue. Moreover, we would be wary of any approach which determines the timeliness of an employee's suit against his employer solely on the basis of records which are within the exclusive control of the employer. On the other hand, we would also view with disfavor a rule that penalizes a company for giving an employee periodic severance pay or other extended benefits after the relationship has terminated rather than severing all ties when the employee is let go.

The ADEA is humanitarian legislation which must be interpreted in a humane and commonsensical manner; its 180-day filing period is very short. An employee should not be required to take action to enforce his rights while he continues to work and while his employment status is at all uncertain.

The 180-day period does not begin to run until the employee knows, or as a reasonable person should know that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer. Until

that time he may have reason to believe that his status as an employee has not finally been determined, and should be given an opportunity to resolve any difficulty while he continues to work for the employer. In any event, a terminated employee who is still working should not be required to consult a lawyer or file charges of discrimination against his employer as long as he is still working, even though he has been told of the employer's present intention to terminate him in the future.

We emphasize that this test is not subjective, and, on the facts of this case we believe that the district judge was correct in ruling that the alleged unlawful practice occurred on October 31, 1975 when Bonham ceased to perform services for Dresser Industries with knowledge and on notice that he was not to return to his job.

■ As applied to the facts of the present case we can discern no "procedural ambiguities" in the requirement of Section 2000e–5(e). The alleged unlawful employment practice consisted of discharging plaintiff for conduct which resulted in a ten-day suspension for a male officer. Both her discharge and the other officer's suspension took place on August 15, 1974. The plaintiff's testimony made it clear that she understood that her discharge was effective immediately. On cross-examination, plaintiff testified as follows:

Q. All right, you were told on Thursday the 15th you were being terminated effective that date, is that correct?

A. Yes, that was true.

Q. And that you would remain on the payroll through August 28th is that not correct? Did you not testify that you requested that you would be given credit for certain holidays and vacation days?

A. Yes, I was.

Q. And was that not the reason you remained on the payroll through August 28th?

A. Yes, that's true.

This was entirely consistent with her statement in a pretrial deposition. This case is clearly different from one where a person with a contract of employment is notified that she will be terminated when her contract expires in the future. Under such circumstances it is reasonable to make the date of actual termination rather than the date of notice the starting point for the 180-day statutory period. Cf. *Egelston v. State University College at Geneseo*, 535 F.2d 752 (2d Cir. 1976). However, where the notice of termination and the act of termination coincide, the date on which these events take place is clearly the one on which the unlawful employment practice occurs, and courts are bound by the congressional determination of the acceptable amount of delay to be permitted in filing a charge with EEOC. *Electrical Workers v. Robbins & Myers*, 429 U.S. 229, 240, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976).

■ The "continuing violation doctrine" does not apply to extend the filing time in the present case. See *Marlowe v. Fisher Body*, 489 F.2d 1057, 1061–63 (6th Cir. 1973). Plaintiff neither pled nor produced evidence of continuing acts of sex discrimination. The only occurrence set forth in her complaint was her own discharge and the only testimony of other acts of sex discrimination related to earlier instances of allegedly disparate treatment of male and female officers. There was no evidence of discriminatory acts or practices occurring after August 15, 1974.

■ Plaintiff also contends that she and the defendants contracted for an August 29th termination date. She relies on a statement in *Electrical Workers v. Robbins & Myers, Inc., supra*, 429 U.S. at 234, 97 S.Ct. at 446, that the parties "could conceivably have agreed to a contract" for a date other than the one of termination to be deemed the statutory occurrence. Plaintiff's own testimony was that she was terminated on August 15th, effective that date, and that she remained on the payroll through August 28th to collect for accrued holidays and vacation days. There is simply no basis in the record for a finding that the parties contracted for a termination date other than August 15, 1974.

Since the district court had heard all the evidence it made a finding that the defendant Metropolitan Nashville-Davidson County Government did violate Title VII in its disparate treatment of plaintiff and the male officer for the same breach of regulations. The district court reasoned that this procedure would obviate the necessity for a remand if this court should disagree with its holding on the issue of timeliness of the EEOC filing. The defendants filed a cross-appeal from this holding. For the reasons set out in this opinion we do not reach the merits of the plaintiff's claim, and the cross-appeal is dismissed.

The judgment of the district court is affirmed. No costs are allowed.