John **BRUNTFIELD** and Rose Bruntfield, Plaintiffs,

v.

**RIDGE TOOL CO., INC.** and Emerson Electric Company, Inc., Defendants.

No. 81 CIV. 8021 (IBC).

United States District Court, S. D. New York.

Sept. 14, 1982.

Miller, Montgomery, Sogi, Brady & Taft, New York City, for movant; Jeffrey W. Herrmann, New York City, of counsel.

Barry M. Gottlieb, Spring Valley, N.Y., for respondents.

OPINION

IRVING BEN COOPER, District Judge.

Movant Emerson Electric Company, Inc. (Emerson) seeks an order, pursuant to Fed. R. Civ. P. 56, dismissing the complaint against it on the ground that there is no genuine issue as to any material fact and consequently it is entitled to judgment as a matter of law. For reasons set forth below, the motion is granted in all respects.

Respondents, John and Rose Bruntfield, commenced this diversity action[1] on December 24, 1981 against Emerson and Ridge Tool Co., Inc. (Ridge) for injuries sustained by John Bruntfield while he was operating a pipe cutting machine produced, manufactured and designed by either Ridge or Emerson. The gravamen of the factual allegations set forth in the complaint is that on January 22, 1979 during the course of his employment at Kay-Fries, Inc. respondent John Bruntfield was operating a pipe cutter known as the "Ridgid 800" and sustained injuries which resulted in several fractured bones and removal of a' nerve from one of his legs. The legal theories of liability advanced on these facts are negligence, gross negligence, strict products liability, breach of warranties and loss of consortium.[2] Re-

---

1. Respondents are both New York residents; Emerson is a Missouri corporation headquartered in St. Louis; Ridge is an Ohio corporation headquartered in Elyria, Ohio.

2. As to each theory advanced, the complaint, filed December 24, 1981 reads as follows: Negligence: "The occurrence and injuries sustained by the plaintiff were caused by the negli-

gence and carelessness of the defendants, RIDGE TOOL CO., INC. and EMERSON ELECTRIC COMPANY, INC., their agents, servants, and/or employees, in that they negligently and carelessly put an inherently dangerous product on the market in that it did not have a deadman's switch, and was negligently manufactured and designed, and failed to have proper warnings on it, failed to give proper instruc-

spondents seek a total of $6.7 million in damages.[3] On February 3, 1982 Emerson and Ridge answered separately, each denies any liability whatever and affirmatively asserts the defenses of contributory negligence,[4] assumption of risk, failure to state a claim upon which relief may be granted, and misuse of the product.

The basis for the instant application is the alternative allegations in the complaint that, "[u]pon information and belief, and at all times hereinafter mentioned, the defendant, Emerson Electric Company, Inc. sold and distributed the pipe cutting machine known as the Ridgid 800 to Kay-Fries, Inc...." Complaint, filed December 24, 1981, par. 8; "Upon information and belief, and at all times hereinafter mentioned, the defendant, Ridge Tool Co., Inc. sold and distributed the pipe cutting machine known as the Ridgid 800 to Kay-Fries, Inc...." Complaint, filed December 24, 1981, par. 9. In essence, Emerson argues that the Ridgid 800 was sold and distributed exclusively by Ridge; Emerson in no way whatsoever participated therein and therefore Emerson is entitled to summary judgment.

The affidavit of Charles Hansen, Emerson's "Senior Vice President-Law" makes clear that, "Ridge ... is a wholly-owned subsidiary of Emerson ... [but] is a corporation separate and distinct.... Financial records and bank accounts for each corporation are separate.... The physical locations ... are different. Emerson does not dominate or control the day-to-day business decisions of Ridge ... [; and does not] control or participate in the design, manufacturing, marketing and product distribution decisions of Ridge....Emerson and its employees have not at any time controlled, managed or participated in any manner in the design, manufacture, production, sale or distribution of the ... Ridgid 800...." Affidavit, Charles Hansen, verified April 19, 1982, pars. 5–6. Further, the affidavit of John F. Murphy, Ridge's "Executive Vice President," unequivocally states, "Ridge, although a wholly-owned subsidiary of Emerson, is a corporation separate and distinct from Emerson....Ridge maintains its own financial records and bank account, negotiates its own contracts, purchases its own goods and services ... hires its own employees ... makes its own decisions regarding the design, manufacturing, sale and distribution of ... products all without domination or control by Emerson....Ridge ... manufactured ... the Ridgid 800...."

tions with respect to the use of their machine, failed to test the machine under conditions in which it was to be used, negligent and careless in failing to construct the machine in conformity with accepted standards and procedures, negligently allowed the machine to remain in this defective and not reasonably safe condition which existed until the time of the incident, negligently sold the product without proper warning and instructions, and defendants were negligent in other ways." *Id.* at par. 11. Gross Negligence: "By reason of the defective and not reasonably safe conditions as abovementioned, defendants were grossly negligent, reckless and malicious, warranting punitive damages, as they endangered the public interest and knew about the defective condition for many years." *Id.* at par. 23. Strict Products Liability: "The defendants are strictly liable in tort for the plaintiff's injuries and damages because the defect was a substantial factor in bringing about the injuries. The injured plaintiff could not by the exercise of reasonable care have discovered the defect or perceived its danger, and being used for purpose intended at the time of incident." *Id.* at par. 18.

Breach of Warranties: "By reason of the above defects and unreasonably safe conditions, defendants breached express warranties, implied warranties of fitness and merchantability, and implied warranty of fitness for a particular purpose." *Id.* at par. 20.
Loss of Consortium: "That solely as a further consequence of defendants' carelessness and negligence, the plaintiff, ROSE BRUNTFIELD, has been, and in the future will be deprived of the services and consortium of her husband, JOHN BRUNTFIELD." *Id.* at par. 25.
*See also* Plaintiffs' Answers to Defendants' Interrogatories, dated May 19, 1982, Nos. 6, 8, 9, 10, 11.

**3.** No breakdown of the damage components is yet available; asserted are $5 million punitive damages on the gross negligence claim; $1.5 million on the alternative theories of negligence, breach of warranties or strict products liability; and $200,000 for loss of consortium.

**4.** This defense also has impact on the derivative loss of consortium claim. *See Maidman v. Stagg,* 82 A.D.2d 299, 441 N.Y.S.2d 711 (2d Dept. 1981).

Affidavit, John F. Murphy, verified April 26, 1982, pars. 3–5.

Against this impressive showing respondents, in a three paragraph "answering affirmation," merely state, "[d]efendant's motion is premature, as discovery has not been completed, and the plaintiffs, to their satisfaction, do not know that ... Emerson ... did not have knowledge of the defective machine ... manufactured by Ridge.... After discovery is completed, defendants could renew their motion if the evidence so warrants." Answering Affirmation, Barry M. Gottlieb, Esq., dated June 2, 1982, par. 3.

The fatal flaws exemplified by respondents' cursory opposition to the summary judgment motion first become evident when we consider the requirements set forth in Rule 3(g), Local Rules of Civil Procedure for the Southern District of New York (effective October 31, 1980):

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.
>
> *The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.*
>
> *All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.* (emphasis added)

This procedural device skillfully requires that the parties bring to the forefront the "material issues of fact" (or lack thereof) presented by such an application. In an era where demands on the judiciary are ever-growing,[5] the wisdom of such a rule is patently obvious.

Hence, unless the opposition complies with the requirement of Rule 3(g), all material facts set forth in movant's 3(g) statement are deemed to be admitted. These facts include: "Emerson does not control or participate in the design, manufacture, marketing and product distribution decisions of Ridge regarding Ridge products. Ridge designed, manufactured and produced a pipe cutting machine known as the Ridgid 800. Emerson has never controlled, managed or participated in the design, manufacture, production, sale or distribution of the Ridgid 800." Statement Pursuant to Civil Rule 3(g), filed May 17, 1982, pars. 5–7.

Accordingly, by virtue of their affirmation respondents are forestalled from advancing any factual argument with respect to Emerson's 3(g) statement.[6] Notwithstanding this fatal defect, further analysis forcefully precludes us from giving any weight whatsoever to respondents' opposition to the instant application. On an application for summary judgment, "Rule 56, Fed. R. Civ. P. requires that the moving party show, on the basis of admissible evidence adduced from persons with personal knowledge of the facts that 'there is no genuine issue as to any material fact.'" *United States v. Pent-R-Books, Inc.,* 538 F.2d 519, 529 (2d Cir. 1976) (citation omitted), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). Put another way, the rule authorizes summary judgment "only where the moving party is enti-

---

**5.** Federal Judicial Center Annual Report (1981) at p. 33: "[I]n 1971, there were 136,553 civil and criminal filings in the federal district courts. In 1981, there were 197,710 filings...."

**6.** This includes any theory relating to the doctrine of piercing the corporate veil. *See, e.g., Kingston Dry Dock Co. v. Lake Champlain Trans. Co.,* 31 F.2d 265 (2d Cir. 1929); *Fisser v. International Bark,* 282 F.2d 231 (2d Cir. 1960); *Berkey v. Third Avenue Railway Co.,* 244 N.Y. 84, 155 N.E.2d 58 (1927); *Lowendahl v. Baltimore & Ohio R.R.,* 247 A.D. 144, 287 N.Y.S. 62 (1st Dept.), *aff'd,* 272 N.Y. 360, 6 N.Y.2d 56 (1936); *Billy v. Consolidated Marine,* 51 N.Y.2d 152, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980).

tled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944). *See also Poller v. Columbia Broadcasting,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975); *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65, 71 (2d Cir. 1971). Further,

> [t]he courts should resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).[7] If the party opposing summary judgment 'generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate.' *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444–45 (2d Cir. 1980).

Although we have recently recognized the appropriate use of summary judgment in 'putting a swift end to meritless litigation,' *Quinn, supra,* 613 F.2d at 445; *Markowitz v. Republic National Bank,* 651 F.2d 825, 828 (2d Cir. 1981), it remains true that summary judgment is improper when the court merely believes that the opposing party is unlikely to prevail on the merits after trial. *Quinn, supra; Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir. 1975); *FLLI Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563, 565 (2d Cir. 1977); *Heyman, supra.* As we explained in *Jaroslawicz, supra,* 'the responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits.' 528 F.2d at 731. *American Intern. Group, Inc. v. London Am. Intern.,* 664 F.2d 348, 351 (2d Cir. 1981); *Schwabenbauer v. Board of Ed., Etc.,* 667 F.2d 305, 313–14 (2d Cir. 1981).

On the instant application, movant has met this burden by offering credible proof by way of affidavits from persons with personal knowledge of facts relevant to our inquiry here—the sworn statements of the vice presidents of Emerson and Ridge. Their combined recital points to only one conclusion: Emerson has no place in this case as a matter of fact and law.

While no doubt movant has the ultimate burden of proof on this application, it is beyond cavil that at this stage of these proceedings, respondents should either generate uncertainty (by way of admissible proof from one or more persons with personal knowledge) sufficient to warrant a denial of the relief sought or succumb to the position of Emerson that it is not a proper party to this action. In fact, Fed. R. Civ. P. 56(e) was amended in 1963 to foster such an approach.[8] The amended portion of

---

7. "In light of the court's obligation to draw all reasonable inferences against the moving party, summary judgment is rarely appropriate where the moving party's state of mind is a material issue. *Schmidt v. McKay,* 555 F.2d 30, 37 (2d Cir. 1977); *Rodriguez v. Board of Education,* 620 F.2d 362 (2d Cir. 1980); *Croley v. Matson Navigation Co.,* 434 F.2d 73, 77 (5th Cir. 1970); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2730 (1973)." *E.E. O.C. v. Home Ins. Co.,* 672 F.2d 252, 257 (2d Cir. 1982).

8. "The last two sentences [of Fed. R. Civ. P. 56(e) were] added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are 'well-pleaded,' and not suppositious, conclusory, or ultimate. *See Frederick Kart & Co., Inc. v. Recordgraph Corp.,* 169 F.2d 580 (3d Cir. 1948); *United States ex rel. Kolton v. Halpern,* 260 F.2d 590 (3d Cir. 1958); *United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc.,* 191 F.Supp. 383 (D. Del. 1961); *Jamison v. Pennsylvania Salt Mfg. Co.,* 22 F.R.D. 238 (W.D. Pa.

Rule 56(e) reads: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.*

The notes of the advisory committee make clear the intent of this amendment:

*The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule.* See 6 Moore's Federal Practice 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

*It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.*

*The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.*

Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example: Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the mo-

tion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.

Notes of the Advisory Committee on Rule 56 (emphasis added).

Thus our Circuit Court has unequivocally ruled that where movant has failed to make the requisite initial showing, "summary judgment will be denied, even though the party opposing the motion has submitted no probative evidence to support its position or to establish that there is a genuine issue for trial. See *Adickes v. S.H. Kress & Co.,* supra 398 U.S. [144] at 159–60, 90 S.Ct. 1598 [1609, 26 L.Ed.2d 142]. . . . In other words, the party opposing the motion has the right to put the moving party to its proof. If, however, the moving party does carry its preliminary burden, then, the opposing party may not defeat the motion by relying on the contentions of its pleadings. Rather, it must produce 'significant probative evidence tending to support [its position].' *First National Bank v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). See *Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co.,* 513 F.2d 102 (2d Cir. 1975)." *Pent-R-Books, supra,* 538 F.2d at 529.

By their silence, respondents, in light of movant's showing, have failed to offer anything in opposition, much less "significant probative evidence tending to support [its position]." [9] *Id.* This is not a situation where because of the early stage of the proceedings, discovery on preliminary jurisdiction issues, etc. is appropriate. *See, e.g., Egelston v. State University,* 535 F.2d 752, 754 (2d Cir. 1976). This case has been pending since December 24, 1981 (almost seven and one-half months) without any affirmative step being taken by respondents in the

---

1958); *Bunny Bear, Inc. v. Dennis Mitchell Industries,* 139 F.Supp. 542 (E.D. Pa. 1956); *Levy v. Equitable Life Assur. Society,* 18 F.R.D. 164 (E.D. Pa. 1955)." Notes of the Advisory Committee on Rule 56. *See also First Nat. Bank v. Cities Service,* 391 U.S. 253, 289 n. 19, 88 S.Ct. 1575, 1593, n. 19, 20 L.Ed.2d 569 (1967).

**9.** Indeed, respondents' failure to offer admissible evidence in opposition from persons with personal knowledge standing alone is sufficient for us to disregard the entire answering affirmation. *See, e.g., United States v. Alessi,* 599 F.2d 513, 514–15 (2d Cir. 1979) (per curiam).

discovery process.[10] The issue here, whether Emerson was involved at all in any phase of the process which culminated in Mr. Bruntfield's use of the Ridgid 800, is far from complex. The inexplicable failure to move forward sharpens the weight of movant's clear showing.[11]

Accordingly, we are constrained to, and do, grant the motion for summary judgment in all respects.

SO ORDERED.

---

10. The court file indicates that the only discovery involvement by respondents was subsequent to an earlier motion by movant (and Ridge) seeking to compel respondents to answer previously propounded interrogatories; and our order granting such relief. Movant (and Ridge) on the other hand have been intimately involved in the defense of the claims asserted against them. *See* Defendants' First Set of Interrogatories filed January 19, 1982; Defendants' Notice of Deposition filed May 11, 1982; Defendants' First Request for Production of Documents filed May 19, 1982; Defendants'

Second Set of Interrogatories filed May 19, 1982; Defendants' Letter to Chambers dated June 4, 1982.

11. By granting summary judgment here, we are observing one of the fundamental purposes of the discovery rules: "Their purpose is to make possible fair and expeditious preparation of cases, *minimizing to the extent possible trial time spent in wasteful sparring unrelated to the merits of the case.*" *Dienstag v. Bronsen,* 49 F.R.D. 327, 328–29 (S.D.N.Y. 1970) (emphasis added).