**Charlene E. RYAN, Plaintiff,**

v.

**NEW YORK STATE THRUWAY AUTHORITY and Robert Stock, Defendants.**

**Civ. A. No. 91–CV–1026.**

United States District Court, N.D. New York.

June 28, 1995.

---

Deily, Testa & Dautel, Albany, NY (Susan S. Dautel, of counsel), for plaintiff.

Dennis C. Vacco, Atty. Gen., State of N.Y. Dept. of Law, Albany, NY (David B. Roberts, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

Defendants New York State Thruway Authority ("Thruway Authority") and Robert Stock[1] move for summary judgment dismissing plaintiff Charlene E. Ryan's complaint. The complaint contains claims of gender discrimination and sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and New York's Human Rights Law, N.Y.Exec. Law § 290 *et seq.* Defendants urge that Ryan did not file a timely administrative complaint with the New York State Division of Human Rights ("DHR") and the United States Equal Employment Opportunity Commission ("EEOC") and therefore cannot maintain either her Title VII claim or her Human Rights Law claim. Alternatively, the Thruway Authority and Stock seek an order which (1) strikes Ryan's demand for a jury trial; (2) strikes her claim for compensatory damages and her claim for punitive damages; and (3) limits her equitable claims for back pay to the period before August 25, 1989. I agree that Ryan's Title VII claim is time barred and thus dismiss it. However, Ryan's Human Rights Law claim is not barred by the statute of limitations, and balancing the factors relevant to a determination of whether to retain jurisdiction indicates that the court should decline to dismiss this state law claim. Ryan is entitled to a jury trial, can claim compensatory damages but not punitive damages, and has a right to a jury determination on the issue of the cut-off date for back pay.

1. Defendants' attorney stated at oral argument that Robert Stock had died.

## BACKGROUND

### I. Procedural Background For This Motion

Ryan filed the complaint initiating this action on September 11, 1991. Her complaint alleges that Stock sexually harassed Ryan beginning in May 1986 and that the Thruway Authority permitted and condoned the harassment, thus compelling Ryan to take an extended medical leave and ultimately disability retirement. The parties have completed discovery and this matter is ready for trial. Defendants filed their motion for summary judgment on December 12, 1994 and I heard oral argument on January 23, 1995.

### II. Administrative Complaint

On October 10, 1989, Ryan filed an administrative complaint with DHR against the Thruway Authority and the Office of the New York State Comptroller. Ryan also authorized DHR to accept her complaint on behalf of EEOC. Ryan's administrative complaint alleged sex based discrimination against her by the Thruway Authority during the period from May 1986 to September 30, 1988, in that Stock, her ultimate supervisor, subjected her to a variety of harassing and intimidating behaviors during that period. The administrative complaint further alleges that Ryan complained to the Thruway Authority and that the Thruway Authority rejected her claim on April 12, 1989, but concomitantly notified her that she could file a complaint with DHR or EEOC.

On February 12, 1991, Ryan amended her complaint to add the following language: "On September 19, 1989, Mr. Stock wrote a memo in which he said that my husband was impotent and that I was after him on (*sic*) order to release my 'stress.'"

EEOC issued a "Right to Sue" letter on August 12, 1991, and on September 4, 1991, DHR dismissed Ryan's complaint for administrative convenience pursuant to section 297.3(c) of the New York State Human Rights Law. N.Y.Exec.Law § 297.3(c). The Division noted in dismissing the complaint that "[p]rocessing the complaint will not advance the State's human rights goals as the complainant has initiated or wants to initiate an administrative agency proceeding or court action based on the same grievance."

### III. Facts

#### A. The Alleged Harassment

For purposes of this summary judgment motion, I accept, as I must, all of Ryan's allegations of fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

Ryan began working for Robert Stock as an administrative aide in May 1986 after several years of employment in other positions with the Thruway Authority. Ryan accepted Stock's offer of employment in order to transfer from nights to days and thus be able to spend more time with her family, despite the fact that Stock delayed her interview by two hours and screamed at Ryan that he did not want to hire her and had promised the job to another woman.

During Ryan's first few months in her new position, Stock treated her in a relatively unremarkable fashion, but late in the summer of 1986 Stock began to develop a hostile attitude toward Ryan. From then on, Stock repeatedly subjected Ryan to public humiliation by either giving her the "silent treatment" or denigrating and mocking her intelligence, her physical appearance and her work. Stock also engaged in other, not easily categorized, forms of abuse including rearranging the office so that Ryan was separated by a screen from other employees and then telling other employees that he did not want to see Ryan's ugly face; commanding Ryan to alternately stand and sit; forbidding Ryan from having interactions with other employees and from participation in office lunches; displaying a cartoon that denigrated women; forcing Ryan to perform humiliating and inappropriate tasks as part of her job; throwing minutes that Ryan had prepared on the floor and then making her pick them up; requiring Ryan to make coffee when male colleagues of Ryan's husband—who worked for another branch of the Thruway Authority—were visiting and then insulting her; accusing Ryan of dishonesty and threatening criminal prosecution; setting up an intercom to eavesdrop on her conversations; and making references to and/or displaying a whip he otherwise kept concealed in a desk drawer. Stock's abusive treatment was fairly constant but accelerated after Ryan completed her probationary period as an administrative

aide.[2] Although Stock directed some similar behaviors at some other women, he did not direct such behaviors at men.

Stock's abusive behavior continued through and including September 30, 1988, when he called an office meeting so that "everybody [could] tell what they didn't like about Charlene." Ryan Dep. at 238. As various staff people offered specific criticisms, Ryan attempted to explain or refute these criticisms. Stock broke in to say that the only reason Ryan had not filed harassment charges against him was that nothing had happened to her. Ryan then—in reaction both to this incident and to her memories of other incidents—began to hyperventilate, have pains in her chest, become shaky, rigid and sweaty, and to lose awareness of her surroundings. Ultimately she left the office and, on the way home, called her doctor because she thought she was having a heart attack.

Having been emotionally traumatized by the harassment she had suffered on the job, Ryan took sick and personal leave on full pay from September 30, 1988, through December 7, 1988. She then went on half-pay status through June 8, 1989. In July 1990 she was granted disability retirement.

Even after she went out on sick leave, Ryan heard from co-workers that Stock continued to denigrate her publicly and frequently. In addition, on October 13, 1988, Stock prepared a memo to his supervisor that accused Ryan of fabricating both her illness and the charges against him. In another memo dated September 19, 1989, and directed to Raphael Morales, director of the Thruway Authority's Office of Equal Opportunity and Compliance,[3] Stock accused Ryan of telling him that she had an overwhelming desire for him and that she was frustrated because of her husband's impotence. This memo was copied to three other Thruway Authority administrators. Mary Ann Meola, one of Ryan's former supervisors, showed her a copy of the memo sometime prior to January 4, 1990.

## B. Ryan's Attempts to Remedy

While Ryan was still working, she complained to two supervisors at the Thruway Authority—Mary Ann Meola and James Murray—about Stock's harassing behavior. In addition, beginning within three weeks of her departure on sick leave, Ryan sought both internal and external remedies for Stock's behavior. A summary of her attempts to obtain alleviation of what she viewed as a hostile environment follows:

1. On October 19, 1988, Ryan met with George Prentice, Stock's immediate supervisor, and told him she could no longer tolerate Stock's abuse. After meeting with Ryan, Prentice recommended that her claim for Workers Compensation benefits be controverted. He did not inquire further as to the nature of the abuse or investigate further.

2. Ryan then called Prentice on October 31, 1988, and told him that she did not know where to go or what to do about her problems with Stock. Prentice did not do anything to help her but did suggest various other administrators to whom she might address certain of her questions.

3. In November 1988, the Teamsters Union ("the Union") commenced a grievance proceeding on behalf of six claimants including Ryan for the purpose of having Stock removed as a supervisor because of his abusive management. The Union alleged that Stock had sexually harassed Ryan. In a decision dated May 12, 1990, the arbitrator— a non-attorney—found that Stock had not sexually harassed Ryan although he credited Ryan's testimony.

4. In December 1988, Ryan filed an affirmative action complaint with the Thruway Authority's Office of Equal Opportunity and

---

2. At this point, Stock allegedly set Ryan up by giving her an involuntary promotion for which she incurred a new probationary period and then refusing to train her for her new duties. Stock eventually gave Ryan an adverse probation report for this new position and then coerced her to resign and go back to her old job as an administrative aide.

3. The Thruway Authority claims that the memorandum was written in response to Ryan's complaint to the United States Department of Transportation Office of Civil Rights (*infra* at 13–15) and is therefore privileged.

Compliance against Stock. Although the investigator received corroboration of some of Ryan's complaints, he found no evidence of sex, age, marital status or disability discrimination. The Office of Equal Opportunity and Compliance of the Thruway Authority notified Ryan on April 12, 1989, that it had found that no Thruway Authority employee had discriminated against her; that it intended to take no corrective action; and that if she was not satisfied, she could file a complaint with DHR or EEOC.

5. On May 8, 1989, Ryan filed a complaint with the United States Department of Transportation's Office of Civil Rights ("DOT"). This complaint did not clearly specify the type of discrimination it alleged. However, Ryan states that one basis was disability. Dep. of Charlene E. Ryan at 357. Ryan also enclosed with the complaint copies of two documents—her internal charges and the union's grievance—that included charges of gender based discrimination or harassment. Ryan abandoned her complaint with DOT in September 1989 because the only remedy DOT could achieve for her was a similar position with the Thruway Authority.

6. Ryan then filed with DHR and EEOC on October 10, 1989.[4]

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of facts must be determined with reference to the governing substantive law. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As to any issue on which the moving party does not have the burden of proof, the moving party may satisfy its burden by "pointing out to the district court ... that

there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

"If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir.1993). In satisfying this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[M]erely colorable" evidence will not suffice as a basis for opposing summary judgment. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

In weighing a motion for summary judgment, the court must accept as true the non-moving party's evidence and make "all justifiable inferences" in the non-moving party's favor. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513.

### II. Ryan's Federal Claims

In a state which, like New York, has an agency with authority to grant or seek relief with respect to discriminatory practices covered by Title VII, an aggrieved person must file with EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1). Because Ryan filed her administrative complaint 375 days after she stopped working with Stock, the Thruway Authority urges that her complaint is time barred. Ryan seeks to avoid the effect of Section 2000e–5(e)(1) on three separate but related theories. First, she argues that the defendant's discrimination against her did not end when she physically

4. Ryan alleges that she brought a handwritten statement of her charges into the DHR office in late September 1989 and that she received a

typed version for her signature on or about October 4, 1989. The typed, signed version was filed on October 10, 1989.

left the workplace but continued both because Stock continued to publicly denigrate her and to defame her in a sexually charged manner and because the Thruway Authority refused to remedy the hostile environment Stock had created. Second, she argues that the Thruway Authority is estopped from asserting that the statute of limitations began to run on any date earlier than April 12, 1989. Finally, she claims that by filing a complaint with DOT on May 8, 1989, she tolled the statute of limitations.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). This general principle guides consideration of each of Ryan's arguments.

### A. Continuing Violation

■■■■ Under the continuing violation exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied* — U.S. ——, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Ordinarily the exception applies only to cases involving specific discriminatory mechanisms such as discriminatory seniority lists and does not address "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism." *Id.* However, "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," a continuing violation may be found. *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994). A Title VII claimant who wishes to claim a continuing violation must clearly assert it both in his filing with EEOC and his complaint. *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*

474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

■■■■ Ryan claims that because she remained employed by the Thruway Authority and intended to return to her workplace if the Thruway Authority took steps to remedy the hostile environment caused by Stock's behavior, the discrimination against her continued while the Thruway Authority investigated her complaints against Stock. Under this analysis, the Title VII administrative statute of limitations would not begin to run until the Thruway Authority sent the April 12, 1989, letter rejecting Ryan's claims of discrimination, and Ryan's filing would be timely. However, a defendant's internal investigations do not constitute a continuing violation. *See Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992) (applying Title VII continuing violation concepts to a Rehabilitation Act discrimination claim). Therefore, the Thruway Authority's investigation of Stock's allegation did not defer the date on which Ryan's Title VII claim accrued.

■■■■ Ryan also urges that because Stock's harassment continued after she left the workplace on sick leave, her complaint fits into the continuing violation exception. On this motion and in her deposition testimony, she alleges that coworkers and supervisors repeatedly informed her that Stock continued to denigrate her after she left, that on October 13, 1988, Stock wrote a memo in which he referred to a history of complaints against Ryan and gave his version of the September 30, 1988, meeting, and that on September 19, 1989, Stock wrote a memorandum to a supervisor in which he accused Ryan of an inappropriate sexual interest in him. This argument fails because Ryan did not give notice of her continuing violation theory in her administrative complaint. *See Miller*, 755 F.2d at 25 (holding that a plaintiff who failed to assert in his administrative filing that his discharge was part of a continuing violation that included subsequent refusals by defendant's subsidiaries to rehire could not allege the refusal to rehire as part of a continuing violation in his complaint); *Carrasco v. New York City Off-Track Betting Corp.*, 858 F.Supp. 28, 31–32 (S.D.N.Y.1994) (holding

that plaintiff who in her EEOC complaint listed July 1, 1991, as both the beginning and the ending date of the discrimination against her was barred from claiming a continuing violation even though she checked the continuing violation box on her EEOC charge). Ryan's administrative complaint, which was notarized by her current attorney, states that the period of discrimination against her was from May 1986 to September 30, 1988. The complaint refers to events after September 30, 1988, only to the extent that it notes that the Thruway Authority had dismissed Ryan's claim of discrimination against Stock on April 12, 1989, and notified her that she could file with DHR or EEOC. The administrative complaint does not allege that the April 12, 1989, decision was itself discriminatory. Even when Ryan filed an amendment to her complaint in February 1991,[5] she described only one act, Stock's memo of September 12, 1989. DHR and EEOC had no reason to go beyond the scope of the complaint and amended complaint to ferret out the other instances which Ryan now claims constitute a practice or policy. Because Ryan failed to clearly indicate a continuing violation in her administrative filing, she cannot rely on this theory now.

■ Moreover, Ryan's initial administrative complaint was not timely filed as to the discriminatory conduct it alleged, and her amended complaint was not timely as to the conduct it alleged. Charges contained in an amendment to an original complaint that was timely filed relate back to the date of the original filing. 29 C.F.R. § 1601.12(b); *Anderson v. Block,* 807 F.2d 145, 147–148 (8th Cir.1986). However, there is no indication in section 1601.12(b) or elsewhere that a complainant can cure an untimely original charge by an amended charge that is itself untimely as to the conduct it alleges.

Finally, even ignoring the failure of the original and amended administrative complaints to give notice of a continuing violation theory and the untimeliness of both the original and amended complaints as to the acts they do allege, Ryan's continuing violation theory is not persuasive. Ryan offers no

competent evidence of any incident occurring after she left the workplace other than the Stock memoranda of October 13, 1988, and September 19, 1989. Her vague allegations concerning statements Stock made about her to co-workers after she left the workplace are supported only by hearsay. The two memoranda coupled with the incidents that occurred before Ryan left the workplace do not constitute "specific and related instances of discrimination [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704. Nor does Ryan allege, as the plaintiff did in *Cornwell,* a specific personnel policy that discriminates on the basis of gender. *See id.*

### B. Equitable Tolling

■ Ryan next claims that the Thruway Authority is estopped from denying that April 12, 1989, is the date on which her Title VII claims accrued because it was on that date that the Thruway Authority wrote to her and told her she could complain to EEOC or DHR if she was not satisfied with the Thruway Authority's action on her complaint. In order to establish equitable tolling, Ryan must establish that she was unaware of the time limit for filing her Title VII complaint because of the Thruway Authority's misleading conduct. *Cf. Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 60–61 (2d Cir.1986) (ADEA case). Ryan neither claims she was ignorant of the Title VII filing requirement nor shows any misleading conduct on the part of the Thruway Authority. A notice stating that Ryan could file with EEOC or DHR does not on its face carry any particular implication about the time limit for filing. Therefore, Ryan's claim of equitable tolling fails.

### C. Filing with the Office of Civil Rights

■ Finally, Ryan urges that by filing a complaint with DOT, she tolled the limitations period for filing a complaint with EEOC. She seeks to analogize filing with DOT to filing with the Office of Federal

---

5. Ryan does not explain why she delayed more than a year after she learned of the memorandum described in the February 1991 amendment to file an amendment.

Contract Compliance ("OFCC") because the Second Circuit has held that filing with OFCC constitutes a filing with EEOC. *Egelston v. State Univ. College at Geneseo*, 535 F.2d 752, 755 n. 4 (2d Cir.1976). Because the Second Circuit premised its holding in *Egelston* on a factor—EEOC's practice of treating complaints filed with OFCC as having been filed with EEOC—that is not present in this case, Ryan's argument lacks merit. *See id.* The *Egelston* court specifically noted that its holding was consistent with EEOC practice which was entitled to "considerable deference." *Id. See also EEOC v. Nicholson File Co.*, 408 F.Supp. 229, 234–235 (D.Conn. 1976) (finding Title VII's administrative statute of limitations to be tolled during the pendency of the plaintiff's complaint with OFCC because OFCC channelled complaints to the federal agency best equipped to investigate them and because OFCC could recommend that EEOC institute proceedings under Title VII). Plaintiff has cited no similar EEOC policy or regulation with respect to DOT and I have found none.[6] I have also found no case within the Second Circuit holding that filing with any agency other than OFCC constitutes a filing with EEOC. I therefore find that Ryan's filing with DOT did not constitute a filing with EEOC.

Finding that filing with DOT does not constitute filing with EEOC does not end the inquiry, however. The Second Circuit has also indicated in dicta that tolling of the time bar may be permitted as "a matter of fairness" if a plaintiff asserts her rights in the wrong forum. *Miller*, 755 F.2d at 24. Again, we find no cases within this circuit applying this rule to an agency other than OFCC. However, assuming that filing with a federal agency other than OFCC can toll the statute of limitations if equitable considerations are present, there are no such equitable considerations in this case. Plaintiff does not claim that she believed a Title VII claim could be filed with DOT. Moreover, the Thruway Authority informed Ryan that she could file a complaint with the EEOC or

DHR before she filed her complaint with DOT. Because Ryan should have known that she should file her sexual harassment complaint with EEOC or DHR, equitable tolling is not appropriate.

### III. Ryan's State Law Claims

Defendants also urge that Ryan's Human Rights Law claim should be dismissed either because it, too, is barred by the statute of limitations or because having dismissed Ryan's federal claim, it would be an abuse of discretion to retain her state claim. Neither argument has merit.

■ In New York, a discrimination claimant must elect to file with DHR or to bring a plenary action and—unless her complaint is dismissed for administrative convenience— cannot bring a plenary action after first resorting to the administrative forum. N.Y.Exec.Law § 297(9). In arguing for dismissal of Ryan's state claim, the defendants rely on the one year statute of limitations for filing an administrative complaint under the Human Rights Law. N.Y.Exec.Law § 297(5). Ryan responds that because her administrative complaint was dismissed for administrative convenience, she is bound not by the administrative statute of limitations but by the three year statute of limitations for bringing a plenary action under the Human Rights Law. N.Y.Exec.Law § 297(9); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). However, defendants claim that DHR acted beyond its power in dismissing Ryan's complaint for administrative convenience rather than dismissing the complaint because it was not timely filed. *See Marine Midland Bank, N.A. v. NYSDHR*, 75 N.Y.2d 240, 246, 552 N.Y.S.2d 65, 551 N.E.2d 558 (1989). In *Marine Midland*, the employer directly challenged a DHR decision that dismissed a complaint for administrative convenience after implicitly finding it to be time barred under the administrative statute of limitations. *Id.* at 244.

---

**6.** Although not entirely clear from the record, it appear most likely that Ryan filed her complaint pursuant to 49 C.F.R. § 27.7(a) which forbids discrimination on the basis of handicap in programs receiving financial assistance from the Department of Transportation. *See* Ryan Dep. at 357. These regulations allow referral to the Department of Justice but not to EEOC. 49 C.F.R. § 27.125(a).

The New York State Court of Appeals held that DHR's administrative convenience dismissal transgressed both the administrative statute of limitations and the requirement that a complainant elect either an administrative or a court remedy. *Id.* at 247. In this case, however, the Thruway Authority did not appeal directly from DHR's administrative convenience dismissal. In addition, DHR made no finding that Ryan's complaint was time barred.[7] Instead, DHR dismissed Ryan's complaint for administrative convenience because she wished to pursue a court action. DHR's administrative convenience dismissal therefore collaterally estops the Thruway Authority from claiming that Ryan's complaint was dismissed for any reason other than administrative convenience. *See Adames v. Mitsubishi Bank Ltd.,* 751 F.Supp. 1565, 1576 (E.D.N.Y.1990); *Lippa v. General Motors Corp., A.C.,* 760 F.Supp. 1062, 1065–66 (W.D.N.Y.1990). Because defendants can no longer question DHR's administrative convenience dismissal and because Ryan filed her complaint in this action within three years of the last act of harassment she alleges, her Human Rights Law claim is not time barred.

■■■■ Defendants urge that I should nevertheless dismiss the Human Rights claim as a matter of sound judicial discretion since Ryan has no remaining federal claims. Jurisdiction over pendent state law claims is generally a matter for the exercise of the court's discretion. *Morse,* 973 F.2d at 127. A federal court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). Ordinarily when all federal claims have been eliminated before trial, balancing the *Cohill* factors points toward dismissal of the state law claims. *Id.* at 350 n. 7, 108 S.Ct. at 619 n. 7. However, where the unique circumstances of the case indicate that judicial economy and fairness are best served by retaining jurisdiction of the state law claim, the district court can and should retain jurisdiction. *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir.1990) (holding that it was not an abuse of discretion for district court to retain jurisdiction of a state law claim despite dismissal of all federal claims where the state law claim presented no novel legal issues, discovery was complete, the case was ready for trial and the court had determined three dispositive motions). This case, which was filed in September of 1991, is trial ready, and I have here decided a dispositive motion after a long discovery process. Neither judicial economy nor the parties would be served by forcing the parties to begin this litigation anew in state court. I therefore decline to dismiss Ryan's Human Rights Law claim.

## IV. Defendants' Remaining Requests

■■■■ Defendants initially requested that Ryan not be granted a jury trial, that she be denied compensatory damages and punitive damages, and that any back pay awarded to her be cut off as of August 25, 1989, when she allegedly declined an offer of employment from the Thruway Authority. However, oral argument significantly limited the scope of the parties' disagreement concerning Ryan's state law claim. Defendants concede that Ryan is entitled to a jury trial on her Human Rights Law claim. *See O'Brien v. King World Productions, Inc.,* 669 F.Supp. 639, 642 (S.D.N.Y.1987). In addition, Ryan may request compensatory damages for pain and suffering, back pay and lost benefits on a Human Rights Law claim. *See Antonsen v. Ward,* 943 F.2d 198, 202 (2d Cir.1991). Finally, plaintiff cannot claim punitive damages on a Human Rights Law claim. *See Thoreson v. Penthouse Int'l. Ltd.,* 80 N.Y.2d 490, 494, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992).

■■■■ Defendants continue to assert vigorously, however, that any award of back pay made to Ryan must be cut off as of August 25, 1989, the date on which they

---

7. If the date Ryan first brought her complaint to DHR is considered to be the date of filing, her complaint would be timely even under the administrative statute of limitations. See note 4 at 7. Because I find that I cannot reexamine DHR's decision, I do not consider this issue.

allege Ryan declined an offer of employment from the Thruway Authority that would have removed her from Stock's supervision and given her benefits and status commensurate with her former employment. New York recognizes that a Human Rights complainant must mitigate her damages by seeking and accepting other employment. *See SDHR v. North Queensview Homes, Inc.*, 75 A.D.2d 819, 821, 427 N.Y.S.2d 483 (1980); *121–129 Broadway Realty Inc. v. NYSDHR*, 48 A.D.2d 975, 976, 369 N.Y.S.2d 837 (1975). However, Ryan claims first that the offers made to her were not unequivocal, unconditional offers of employment and second that she was unable to act on the offers because of the disability, post traumatic stress disorder, caused by Stock's actions. Both of these contentions present issues of fact for the jury. *See Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830 (2d Cir.1992). The ultimate question for the jury is whether the plaintiff acted reasonably. *Id.*

### CONCLUSION

Defendants' request for summary judgment dismissing plaintiff's complaint is granted with prejudice as to Ryan's Title VII claim and denied as to her Human Rights Law claim. Plaintiff's request for punitive damages is stricken, but her requests for back pay and other compensatory damages on her Human Rights Law claim will be submitted to the jury. Defendants' request that we strike plaintiff's jury demand is denied.

IT IS SO ORDERED.