**Freddy QUIROS, Plaintiff,**

v.

**CIBA–GEIGY CORPORATION, Defendant.**

**No. 95 Civ. 5640(JES).**

United States District Court, S.D. New York.

June 5, 1998.

Epstein Becker & Green, P.C., New York City, for defendant, Michael R. Zeller, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Freddy Quiros ("Quiros"), an employee of defendant Ciba–Geigy Corporation ("Ciba–Geigy"), brings the instant action alleging violations of the due process clause of the Fourteenth·Amendment, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and New York Executive Law § 296 in connection with his employment.[1] Pursuant to Fed. R.Civ.P. 56, Ciba–Geigy moves for summary judgment. For the reasons set forth below, Ciba–Geigy's motion is granted.

## BACKGROUND

Quiros, an accounts receivable adjuster, has been employed by Ciba–Geigy in various positions since 1985.[2] *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment dated July 15, 1996 ("Def.'s Mem."), at 4. Quiros claims he was denied promotions and paid less than similarly-situated employees because he is Hispanic and Costa Rican. *See* Amended Complaint dated September 21, 1995 ("Am.Compl."), ¶¶ 11–12, 14. Quiros also claims that he and other minority employees have been discriminated against with respect to wages and wage increases. *See* Plaintiff's Memorandum of Law in Opposition to Defendants [sic] Motion for Summary Judgment dated December 13, 1996 ("Pl.'s Mem."), at 6–7.

Ciba–Geigy moves for summary judgment, arguing *inter alia,* that Quiros's due process claim is barred because there is no state action, *see* Def.'s Mem. at 31–32; that all but one of Quiros's Title VII claims are time-barred, *see id.* at 14; and that Quiros has

Law Office of Stephen C. Jackson, New York City, for plaintiff, Stephen C. Jackson, Lawanda A. Jackson, of counsel.

1. Quiros has withdrawn his due process claim brought under New York State Constitution Art. I, Sect. 6., and emotional distress claims. *See* Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment dated December 13, 1996 ("Pl.'s Opp. Aff."), at 1, ¶ 2.

2. Quiros worked sporadically as a temporary employee during 1984–1985, and was hired full-time in June 1985. *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment dated July 15, 1996 ("Def.'s Mem."), at 3–4.

failed to establish a prima facie case of disparate treatment and/or pay. *Id.* at 15–26.

In response to this motion, Quiros offers relevant payroll records from Ciba–Geigy which he claims establish a trend that Quiros and other minority employees have received disparate pay compared to similarly-situated non-minority employees. *See* Pl.'s Mem. at 6–7. Specifically, Quiros claims that while Caucasian employees received an average wage increase of 7.36% per raise, minority employees only received an average increase of 2.76% per raise. *See* Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants [sic] Motion for Summary Judgment dated April 14, 1997 ("Pl.'s Supp. Mem."), at 3–6. Further, Quiros argues that he was mocked and scorned by fellow employees due to his Spanish accent whereas a non-minority coworker from Switzerland was not subject to such abuse. *See id.* at 12–13.

## DISCUSSION

### I. *Failure to Promote*

■ To establish a prima facie case of discrimination, a plaintiff bears the burden of establishing that:

> (i) he is a member of a protected class; (ii) he was qualified for the position; (iii) he was subjected to an adverse employment decision; and (iv) either the position remained open or he was replaced by someone not a member of his class.

*de la Cruz v. N.Y.City Human Resources Admin. Dept. of Social Serv.,* 82 F.3d 16, 20 (2d Cir.1996) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If plaintiff comes forward with evidence establishing an inference of discrimination, *see Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1239 (2d Cir.1995), the burden of production shifts onto the defendant employer to offer a legitimate, non-discriminatory reason for failing to promote plaintiff employee. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. However, the burden of persuasion remains with the plaintiff, who must prove by a preponderance of the evidence that the legitimate reason offered by the defendant to explain its conduct is, in fact, a pretext for discrimination. *See de la Cruz,* 82 F.3d at 20 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

During the course of litigation, Quiros identified seven promotions that he claims were denied him and given to others for discriminatory reasons.[3] However, despite being given the opportunity to supplement his pleadings, Quiros has identified only two of the employees promoted to the positions he sought.[4] Thus, Quiros has failed to establish the fourth element of the *McDonnell Douglas* test with respect to all but two promotions.[5]

Furthermore, Quiros identifies one of these remaining two promotions, to the position of Supervisor—Adjustment Unit, as having occurred in 1990. *See supra* n. 3. Since Quiros filed his claim with the New York State Division of Human Rights ("NYSDHR") on February 10, 1993, more than 300 days after he was denied this promotion in 1990, this claim is time-barred. *See* 42 U.S.C. § 2000e–5(e)(1); *see also Butts v. City of New York Dept. of Hous. Preservation and Dev.,* 990 F.2d 1397, 1401 (2d Cir. 1993) (citations omitted). Moreover, Quiros has offered no reason why the Court should

---

3. Although Quiros failed to identify in his Amended Complaint *any* specific promotion that he was discriminately denied, Quiros has since come forward and identified the following promotions: Unit Head in 1988, *see* Deposition of Freddy Quiros taken December 21, 1995 ("Quiros Dep.") at 88, 206, 228; Credit Administrator in the Export Group in 1990, *see id.* at 212; Supervisor Position in the Adjustment Unit in 1990, *id.* at 230–31; Export Manager in 1991, *id.* at 218; Position in Site Accounting in 1991, *id.* at 271; same in 1992, *id.;* and Accountant in 1994, *id.* at 396.

4. Quiros identified Kathleen Gleason as the employee promoted to the Supervisor Position for which he had applied, *see* Quiros Dep. at 86–87, and Janet Wiseltier as the employee promoted to the position of Accountant. *See id.* at 396.

5. Furthermore, with respect to all seven promotions, Quiros has offered no evidence that any employee promoted or placed into the position was less qualified or no more qualified than he was. This easily could have been proven by comparing the credentials and performance evaluations of the employees promoted with his own.

equitably toll the limitations period with respect to his claims. *See Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *Ryan v. N.Y. State Thruway Authority,* 889 F.Supp. 70, 78 (N.D.N.Y.1995); *Meckes v. Reynolds Metals Co.,* 604 F.Supp. 598, 605–606 (N.D.Ala.1985) (citations omitted). No conduct of Ciba–Geigy is alleged to have delayed the filing of his claim with the NYSDHR. *See Ryan,* 889 F.Supp. at 78. Therefore, there is no basis for equitable tolling and the only remaining claim is the denial of promotion to Accountant in 1994.

■ With respect to this promotion, Quiros has failed to offer any evidence that he was qualified for the position of Accountant in the first place, or that the employee who received the promotion, Janet Wiseltier, was no more qualified or less qualified than he is. Thus, Quiros has not established a prima facie case of discrimination under *McDonnell Douglas,* and this claim must also be dismissed.

■ In any event, no rational jury could find that Quiros was not promoted because of discrimination. Ciba–Geigy has supplied sworn affidavits establishing that since 1988 Quiros was told repeatedly that he lacked communication skills and that his supervisor recommended that he take a class in communication skills, which Quiros failed to take. *See* Quiros Dep. at 88–89, 271, 341–45. In the face of these affidavits, Quiros has come forward with no evidence supporting an inference that these affidavits are false or that these comments were merely a pretext. *See Hassan v. Auburn Univ.,* 833 F.Supp. 866

(M.D.Ala.1993), *aff'd,* 15 F.3d 1097 (11th Cir. 1994). He merely argues only that he received very good performance evaluations overall during the course of his employment, *see* Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment dated December 13, 1996 ("Pl.'s Aff."), Exh. B,[6] and makes conclusory allegations that he has been discriminated against because of his race and national origin. *See* Pl.'s Supp. Mem. at 2, 3, 8, 13–14. While the level of proof a plaintiff must present to establish a prima facie case of discrimination is low, it is not non-existent. *See de la Cruz,* 82 F.3d at 20 (citations omitted). Therefore, because Quiros has failed to offer any evidence that he had the basic skills necessary to perform the job of Accountant, *see id.,* or that defendant's reason for failing to promote him is pretextual, this claim must be dismissed.

### II. *Disparate Pay*

■ Quiros has presented the Court with Ciba–Geigy's payroll records from the relevant employment periods in question to support his claim that he and other minority employees have received disparate wages and wage increases compared to similarly-situated non-minority employees. *See* Pl.'s Mem. at 6–7. Although Quiros claims that these payroll records establish a discriminatory trend in that Caucasian employees received an average wage increase of 7.36% per raise, while minority employees only received an average increase of 2.76% per raise, the records before the Court do not support his claim. Indeed, they refute it.

---

**6.** Quiros submitted copies of his performance evaluations for the following years (overall comments have been noted in parentheses):

(1) Performance Evaluation dated April 22, 1987 (met standards of performance in key areas, performance fully acceptable); (2) Performance Evaluation dated April 24, 1988 (fully achieves performance expectations); (3) Performance Evaluation dated April 24, 1989 (fully achieves performance expectations—"an asset to the Department"); Performance Evaluation dated April 17, 1990 (significantly exceeds performance expectations—"a superior

worker"); (4) Performance Evaluation dated March 27, 1991 (fully achieves performance expectations—"must improve on lines of communication with ... staff"); (5) Performance Evaluation undated (1992) (performance needs improvement—regarding providing supervision, "no significant improvement;" regarding communication, "performance ... spotty;" examples of negative incidents listed in report); and, (6) Performance Evaluation dated August 12, 1992 (fully achieves performance expectations).

*See* Pl.'s Aff.Exh. B.

Quiros has based his calculations and arguments on a comparison of his own payroll records with the records for twenty-one of his co-workers. *See* Pl.'s Aff., Exh. D. However, Quiros, an accounts receivable adjustor at pay grade 8 during the relevant time period, mistakenly includes in his calculations non-similarly situated employees, including credit administrators (Richard Gee, pay grade 438; Kathleen Gleason, pay grade 438), the unit head of the credit department (Leonore Kenny, pay grade 9), the managers of credit information systems (Robert Miazga, pay grade 551; James Lenahan, pay grade 479), an accountant (Janet Wiseltier after April 1994, pay grade 275) and the export credit manager (Maxine Shepard, pay grade 55). *See Wolper v. McGraw-Hill,* 1997 WL 252032, at *4 (S.D.N.Y. May 13, 1997) (citations omitted). Furthermore, of the eight similarly situated (grades 7 and/or 8) non-minority co-workers that Quiros has identified as discriminatorily being paid more than him, *see* Quiros's Dep. at 362–63 (accounts receivable analyst Michaelina Affrunti), *id.* at 366 (credit and collections clerk Patricia Dobler), *id.* at 388 (accounts receivable analyst Anne Marie Giampiccolo), *id.* at 391–92 (senior accounting clerk Janet Wiseltier), *id.* at 409 (customer service representative/credit and collections clerk Jo–Ann Monteleon), *id.* at 414 (accounts receivable adjustor Devika Naraine), *id.* at 422–23 (credit and collections clerk Martin O'Connor), *id.* at 438 (accounts receivable analyst Patricia O'Grady), the payroll records show that plaintiff was paid the same or higher wages than all except one co-worker, Devika Naraine, who was paid $1.00 more per hour than plaintiff during the relevant period and who is also a minority. *See* Pl.'s Aff.Exh. D; *see also* Def.'s Mem. at 8.

Plaintiff's statistical evidence of discriminatory wage increases is equally flawed. *See* Pl.'s Supp.Mem. at 4–6. First, Quiros incorporates into his calculations non-similarly situated employees that were never in his pay grade (Leonore Kenny, pay grade 9) or that have since been promoted out of his pay grade (Janet Wiseltier, pay grade 275). *See id.* at 5–6. Ciba–Geigy's payroll records clearly establish that Jo–Ann Monteleon, the only non-minority employee who, like Quiros, was raised from pay grade 8 to 51, in fact received the exact same overall increase in pay as did Quiros (39.58%) over a practically identical time period (1989–1995). *See* Pl.'s Aff.Exh. D. Other non-minority employees that were raised from pay grade 6 or 7 to grade 51 received smaller wage increases ranging from 3.8% (Patricia O'Grady) to 15% (Ann Marie Giampiccolo). *See id.* Only one non-minority employee, Katherine Messina, received a 62.5% pay increase over the course of seven years (1988–1995), thus resulting in a salary and pay grade identical to what Quiros was receiving in 1995. *Id.* Furthermore, when broken down on a year by year basis, there simply is no pattern of material disparity as to percentage raises received by similarly situated minority and non-minority employees. *See* Appendix A.

Second, with respect to wage increases enjoyed by other minority employees, Quiros has not interpreted the payroll records upon which he relies with any rational consistency. *Compare* Pl.'s Exh. D (Payroll data for Gertrude Bowling—12.03% wage increase from pay grade 7 to 8 in 1991) *with* Pl.'s Supp. Mem. at 6 (1.2% average increase per raise); *and* Pl.'s Exh. D. (Payroll data for Margaret Reeder—5.54% raise in pay grade 6 from 1991 to 1994) *with* Pl.'s Supp.Mem. at 6 (2.7% average increase per raise); *and* Pl.'s Exh. D (Payroll data for Gloria Sanders—18.9% wage increase in pay grade 7 from 1989 to 1994) *with* Pl.'s Supp.Mem. at 6 (3.7% average increase per raise). Moreover, Quiros bases his argument upon a pool of only four minority employees compared to eleven non-minority employees. This statistical presentation is insufficient to withstand defendant's well-supported and well-documented motion for summary judgment. *Cf. Zenni v. Hard Rock Cafe Int'l., Inc.,* 903 F.Supp. 644, 654 (S.D.N.Y.1995) (statistical evidence of employer's general hiring practices is insufficient to prove particular case of discrimination), and the pool is too small to reliably

establish a discriminatory trend. *See Lough-ran v. Manhattan Life Ins. Co.*, 1987 WL 10385 (S.D.N.Y. Apr.24, 1987), *aff'd mem.*, 838 F.2d 1203 (2d Cir.1987); *Avillan v. Digital Equip. Corp.*, 1994 WL 225458 (S.D.N.Y. May 26, 1994).

## III. *Hostile Environment*

■ Quiros asserts he was subject to ridicule from his co-workers because of his Spanish accent while a Swiss co-worker was not. However, the only ridiculing statement that Quiros identifies is that of Frank Moricco, then director of credit accounts receivables, who asked other employees if they could understand what Quiros was saying.[7] *See* Pl.'s Supp.Mem. at 12–13; Quiros Dep. at 97–98. Quiros also claims that sometimes he was called "Pancho." Quiros Dep. at 97.

■ To prevail on a hostile environment claim, Quiros must show:

1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment and 2) that a specific basis exists for imputing conduct that created the hostile environment to the employer.

*Briones v. Runyon*, 101 F.3d 287, 291 (2d Cir.1996) (citation omitted). Although afforded ample opportunity to supplement his papers, Quiros offers only conclusory statements of alleged discrimination and has failed to identify when, where and/or how often he was either called "Pancho" by Moricco, or how often Moricco asked other employees if they understood him.[8] *See* Pl.'s Mem. at 2 ("Mr. Quiros was subjected to ridicule, scorn and humiliation from defen-

dant because of his Spanish accent."), 7–8 ("Mr. Moricco's action created an environment that caused plaintiff to be subjected to discriminatory ridicule and scorn . . . [and] to feel humiliated and ostracized."); Pl.'s Supp. Mem. at 13 (same). Having failed to present the Court with any evidence that his workplace was permeated with severe or pervasive discriminatory intimidation, Quiros's hostile environment claims must be dismissed.

■ Finally, plaintiff's due process claims must be dismissed since he has failed to allege any state action. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994). The only remaining claim to be decided is the alleged violation of New York Executive Law § 296. Because all federal claims have been dismissed and no diversity exists, the Court declines to exercise jurisdiction over this claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Therefore, the remaining state law claim is dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for defendant and dismiss the action with prejudice.

It is **SO ORDERED.**

---

7. Although during his deposition Quiros also identified a "Mr. Leone" as another person at Ciba–Geigy who asked employees if they could understand Quiros, *see* Quiros Dep. at 98, Quiros has failed to list Mr. Leone in his papers as one of the persons who ridiculed him. *See* Pl.'s Mem. at 7–8; Pl.'s Supp.Mem. at 12–13.

8. In fact, Quiros admits that his communication skills were a problem and that he was asked by his employer to take a language skills class. *See* Quiros Dep. at 88–89, 271, 341–45.

## Appendix A

**1992**

| Caucasian Employees* | Salary*** | Increase % | Effective Date |
|---|---|---|---|
| Wiseltier** | $505 | | 4/18/92 |
| Libertino | 597 | 5.7% | 4/25/92 |
| O'Connor | 537 | 6.3% | 5/18/92 |
| | 580 | 8.0% | 7/18/92 |
| Giampiccolo | 500 | 5.3% | 7/4/92 |
| Affrunti **** | 9.5 ***** | | 11/30/92 |
| Kenny | 694 | 6.4% | 5/3/92 |
| Guglich | 8.5 ***** | 6.3% | 10/12/91 |
| | 9.25 ***** | 8.8% | 8/1/92 |
| O'Grady | 501 | 5.3% | 4/11/92 |
| Messina | 600 | 6.4% | 5/23/92 |
| Monteleon | No Raise in 1992 | | |
| Philpin | 501 | 5.3% | 12/28/91 |

* Since Dobler was terminated 9/20/91 and Gee is an exempt employee, they have not been included in this chart.

** Wiseltier was hired as a full-time employee on 4/18/92.

*** Salaries listed are weekly unless otherwise noted.

**** Affrunti was hired on 11/20/92.

***** Hourly rate.

**1992**

| Minority Employees* | Salary | Increase % | Eff. Date |
|---|---|---|---|
| Quiros | $595 | 5.3% | 8/1/92 |
| Sanders | 492 | 5.4% | 12/28/91 |
| Reeder | 469 | 5.4% | 12/28/91 |
| Naraine ** | No Raise in 1992 | | |

* Bowling is not included in this chart because she was terminated on 3/20/92.

** Quiros did not include Naraine, a minority of Indian descent, in his calculations.

Analysis: Quiro's raise was equal to Giampiccolo's, O'Grady's and Philpin's raises, and exceeded Monteleon's raises. Sander's and Reader's raises exceeded Giampiccolo's, O'Grady's, Philpin's and Monteleon's raises.

**1993**

| Caucasian Employees* | Salary | Increase % | Effective Date |
|---|---|---|---|
| Wiseltier | $525 | 4.0% | 4/17/93 |
| O'Connor | 612 | 5.5% | 5/15/93 |
| Giampiccolo | 523 | 4.6% | 7/3/93 |
| Affrunti | 515 | 44.6% | 6/19/93 |
| Kenny | 725 | 4.5% | 5/1/93 |
| Guglich | 9.75 ** | 5.4% | 10/10/92 |
|  | 440 | 20.3% | 10/31/92 |
| O'Grady | 522 | 4.2% | 4/10/93 |
| Messina | 630 | 5.0% | 5/22/93 |
| Monteleon | 586 | 4.5% | 12/26/92 |
| Philpin | No raise in 1993 | | |

\* Since Libertino was promoted to exempt status on 1/1/93 he has not been included in this chart.

\*\* Hourly rate.

**1993**

| Minority Employees | Salary | Increase % | Eff. Date |
|---|---|---|---|
| Guiros | $615 | 3.4% | 7/31/93 |
| Sanders | 514 | 4.5% | 12/26/92 |
| Reeder | 485 | 3.4% | 9/4/93 |
| Naraine | 615 | 4.2% | 12/26/92 |

Analysis: Quiros's raise exceeded Philpin's raise. Sander's raise exceeded Wiseltier's, O'Grady's and Philpin's raises, and equalled Kenny's and Monteleon's raises. Naraine's raise exceeded Wiseltier's and Philpin's raises, and equalled O'Grady's raise.

**1994**

| Caucasian Employees* | Salary | Increase % | Effective Date |
|---|---|---|---|
| Giampiccolo | $548 | 4.7% | 7/2/94 |
| Affrunti | 540 | 4.8% | 6/18/94 |
| Kenny | 755 | 4.1% | 5/1/94 |
| Guglich | 462 | 5.0% | 10/30/93 |
| O'Grady | 542 | 3.8% | 4/9/94 |
| Messina | 650 | 3.1% | 5/21/94 |
| Monteleon | 616 | 5.1% | 1/1/94 |
| Philpin | 13.76 ** | 2.9% | 1/1/94 |

\* Since Wiseltier became an exempt employee on 4/16/94 and O'Connor's employment terminated on 8/13/93, they have not been included in this chart.

\*\* Hourly rate.

### 1994

| Minority Employees | Salary | Increase % | Eff. Date |
| --- | --- | --- | --- |
| Quiros | $635 | 3.2% | 7/30/94 |
| Sanders | 529 | 2.9% | 1/1/94 |
| Reeder | 495 | 2.0% | 10/1/94 |
| Naraine | 640 | 4.0% | 1/1/94 |

Analysis: Quiros's raise exceeded Messina's and Philpin's raises. Naraine's raise exceeded O'Grady's, Messina's and Philpin's raises, and was within 1% of Giampiccolo's, Affrunti's, and Kenny's raises.

### 1995

| Caucasian Employees* | Salary | Increase % | Effective Date |
| --- | --- | --- | --- |
| Affrunti | 565 | 4.6% | 4/1/95 |
| Kenny | 775 | 2.6% | 4/1/95 |
| Guglich | 485 | 4.9% | 10/29/94 |
|  | 525 | 8.2% | 4/1/95 |
| Monteleon | 650 | 5.5% | 4/1/95 |

* Since O'Grady's employment terminated on 2/28/95, Messina's employment terminated on 6/30/95, Giampiccolo's employment terminated on 2/28/95 and Philpin's employment terminated on 7/15/94, they have not been included in this chart.

### 1995

| Minority Employees* | Salary | Increase % | Eff. Date |
| --- | --- | --- | --- |
| Quiros | $650 | 2.3% | 4/1/95 |
| Naraine | 680 | 6.2% | 4/1/95 |

* Since Reeder's employment terminated on 12/31/94 and Sanders' employment terminated on 2/25/95, they have not been included in this chart.

Analysis: Quiros's raise was within 0.3% of Kenny's raise. Naraine's raise exceeded Affrunti's, Kenny's and Monteleon's raises.